STATE OF NORTH CAROLINA v. JOHNNY FOWLER

No. 152A84

(Filed 6 November 1984)

**1. Constitutional Law §§ 28, 56; Criminal Law § 122— court's inquiry into division of jury—no violation of due process and trial by jury rights**

The trial court's inquiry into the numerical division of the jury after the jury reported that it was deadlocked did not as a matter of law violate defendant's right to due process of law or his right to trial by jury under the U. S. Constitution.

**2. Constitutional Law § 56; Criminal Law § 122— court's inquiry into division of jury—no violation of right to jury trial—supervisory jurisdiction of Supreme Court**

The trial court's inquiry into the numerical division of the jury after the jury had reported that it was deadlocked did not constitute a *per se* violation of defendant's right to trial by jury under Art. I, § 24 of the N. C. Constitution where the trial court made it clear that it did not desire to know whether the majority was for conviction or acquittal. Nor did such inquiry into the division of the jury interfere with the proper administration of justice so as to require the Supreme Court to exercise its supervisory power to make such inquiry reversible error.

**3. Criminal Law § 122— court's inquiry into division of jury—no coercion**

The trial court's inquiry into the numerical division of the jury after the jury reported late Friday afternoon that it was deadlocked was not coercive in the totality of the circumstances and was thus not reversible error.

APPEAL by defendant pursuant to N.C. Gen. Stat. § 7A-27(a) (1981) from the judgment entered by *Battle, Judge,* at the 31 October 1983 Criminal Session of WAKE County Superior Court.

Defendant was charged in indictments, proper in form, with rape, kidnapping, and armed robbery. Following verdicts of guilty, sentences of life imprisonment on the rape charge, fourteen years on the armed robbery charge, and nine years on the kidnapping charges were entered, the sentences to run consecutively. We granted the defendant's motion to bypass the Court of Appeals on the kidnapping and armed robbery charges on 4 April 1984.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Elizabeth C. Bunting, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Ann B. Petersen, for the defendant.*

COPELAND, Justice.

Defendant's sole assignment of error concerns the inquiry made by the trial judge into the numerical division of the jurors on Friday afternoon. The record discloses that the jury retired sometime near midmorning on Friday, 4 November 1983. They deliberated until the lunch recess and resumed deliberations at 2:00 p.m., remaining in the jury room until late Friday afternoon.

At this point the trial judge called the jury back into the courtroom and inquired as to whether a verdict had been reached. The foreman indicated no verdict had been reached but did say that the jury was making progress. The trial judge then asked if the jury would like to deliberate further that afternoon or recess until Monday morning. The jury wished to continue deliberations.

Sometime later, the jury asked to return to the courtroom where the foreman told the court, "we believe that we are locked and cannot reach a verdict." The following exchange then took place.

COURT: Well, I don't want to know how many are voting for guilty or not guilty in relation to any of the charges; but I would be interested in knowing how you are divided, whether it's six to six, nine to three.

FOREMAN: Eleven to one.

COURT: Well, the hour is getting on. Still, you really haven't had an opportunity to deliberate all that long, everything considered. I know it will be a hardship on you, but I would very much appreciate your coming back Monday morning to see if after further deliberation it might be possible for you to reach a verdict. So, we will take a recess at this time until 9:30 Monday morning. Of course during the recess please remember all the cautions that I have been giving you over and over again. Please be very careful not to talk with anyone at all about the case during the recess; and please remember not to read, watch or listen to anything about it that might come from any news media. Of course do not allow anyone to talk about it in your presence. It would really be best to the extent you can, just sort of put the matter out of your mind over the weekend. I know that will be

very hard to do, but to the extent you can, just come back fresh Monday morning ready to resume your deliberations.

I very much appreciate the way you have stuck with it and the way you're going about your business. So, thank you very, very much; and you may go at this time and please come right back here to this courtroom and have a seat in the jury box at 9:30 Monday morning. Recess until 9:30 Monday morning.

When the jurors returned on Monday morning the trial judge gave the legislatively approved version of the *Allen* charge, *Allen v. United States*, 164 U.S. 492 (1896), found in N.C. Gen. Stat. § 15A-1235 (1983). The jury then retired at 9:40 a.m. to resume deliberations, took a brief recess around 11:30 a.m. and retired again at 11:55 a.m. At approximately 1:10 p.m. the jury returned to the courtroom with a verdict of guilty on all charges.

Defendant contends that the inquiry into the numerical division of the jury by the trial judge was reversible error because it tended to coerce a verdict. More specifically, defendant argues that asking the jury how it is divided violates the United States Constitution, the North Carolina Constitution, and constitutes prejudicial error under the facts and circumstances of this case. We disagree.

I.

[1] Defendant first argues that questions by the trial court concerning the division of the jury deprived him of his rights to trial by jury and due process of law guaranteed by the federal constitution. Defendant relies on the old case of *Brasfield v. United States*, 272 U.S. 448 (1926). In that case the federal district court judge inquired into the division of the jury and gave the *Allen* charge. 8 F. 2d 472 (9th Cir. 1925). In a rather short opinion the Supreme Court concluded that it was essential to the fair and impartial conduct of the trial that inquiry into the division of the jury be grounds for reversal because such inquiries tended to be coercive. 272 U.S. at 450. Defendant argues that the Court's decision in *Brasfield* is based on the sixth amendment and the due process clause of the fifth amendment, both of which are applicable to the states through the fourteenth amendment. We do not find this argument persuasive.

The propriety of inquiries into the division of the jury had previously been before the Supreme Court in the case of *Burton v. United States*, 196 U.S. 283 (1905). After finding a number of errors which were cause for reversal, the Court noted that it disapproved of the trial judge's inquiry into the division of the jury because it was not necessary and in some cases might lead to improper influences. *Id.* at 307-08. The Court concluded that the proper administration of justice did not permit such questions. *Id.* at 308. When this issue came up in *Brasfield*, the Court noted that there was a division among the circuit courts as to whether the discussion in *Burton* concerning questions on the division of the jury constituted a rule forbidding such questions or was merely an expression of the Court's disapproval of the practice. *Id.* at 449. The Court then held that inquiry by the trial court into the division of the jury constituted reversible error. *Id.* at 450. We conclude that the Supreme Court's ruling in *Brasfield* was based on its supervisory power over the federal courts and thus is not binding on this Court.

The language used in *Burton* indicates that the Court was not announcing a new rule of constitutional law. As in *Brasfield* no sections of the Constitution were cited, and the Court justified its ruling on the basis that it was necessary for the proper administration of justice. We agree with the Fourth Circuit Court of Appeals that *Brasfield* evolved from the rule of *Burton* and that the two cases should be read in conjunction. *Ellis v. Reed*, 596 F. 2d 1195 (4th Cir. 1979), *cert. denied*, 444 U.S. 973 (1979). When that is done, it becomes clear that *Brasfield* was merely intended to show that the language in *Burton* disapproving of questions on the division of the jury was mandatory and required reversal in the federal courts when such questions were asked. Two federal circuit courts in addition to the Fourth Circuit have considered this question in habeas corpus cases and have reached the same conclusion. *United States ex rel. Kirk v. Director*, 678 F. 2d 723 (7th Cir. 1982); *Cornell v. Iowa*, 628 F. 2d 1044 (8th Cir. 1980), *cert. denied*, 449 U.S. 1126 (1981). The Fifth Circuit has gone further and has said that even in the federal courts *Brasfield* is not an inflexible rule. The court held that if the inquiry is unlikely to have a coercive effect it should be disregarded as not affecting substantial rights. *Beale v. United States*, 263 F. 2d 215 (5th Cir. 1959). The Fourth Circuit may also have adopted such a harmless

error standard. *See United States v. Rogers*, 289 F. 2d 433, 435 n. 5 (4th Cir. 1961). A majority of the state courts that have been faced with this issue have declined to follow the rule of *Brasfield*, and some have specifically found that the Supreme Court developed the rule in the exercise of its supervisory powers over the federal courts. *See generally* Annot., 77 A.L.R. 3d 769 §§ 4-6 (1977 & Supp. 1984). At most, *Brasfield* sets out a rule of federal practice and is not binding on our courts. We, therefore, hold that a trial court's question on the division of the jury does not as a matter of law violate a defendant's right to due process of law and trial by jury under the Federal Constitution.

## II.

[2] Defendant next argues that inquiry by the trial court into the division of the jury violates the right to trial by jury protected by Art. I, § 24 of the North Carolina Constitution. Defendant has cited no authority to support this argument, and we find it to be without merit.[1] It is true that our constitution has been interpreted to require a jury of twelve and a unanimous verdict. *State v. Hudson*, 280 N.C. 74, 79, 185 S.E. 2d 189, 192 (1971), *cert. denied,* 414 U.S. 1160 (1974). This Court has also recognized the importance of protecting jury deliberations from influences which deprive jurors of their freedom of thought and action. *State v. Lipfird*, 302 N.C. 391, 276 S.E. 2d 161 (1981); *State v. Roberts*, 270 N.C. 449, 451, 154 S.E. 2d 536, 537-38 (1967). We do not consider questions concerning the division of the jury to be a *per se* violation of Art. I, § 24 when the trial court makes it clear that it does not desire to know whether the majority is for conviction or acquittal. Such inquiries are not inherently coercive, and without more do not violate the right to trial by jury guaranteed by the North Carolina Constitution. *State v. Yarborough*, 64 N.C. App. 500, 502, 307 S.E. 2d 794, 795 (1983). The appropriate standard is whether in the totality of the circumstances the inquiry is coercive. *Ellis*, 596 F. 2d at 1200; *Yarborough*, 64 N.C. App. at 502, 307

---

1. This Court has decided cases where the division of the jury has been a factor, but none have dealt with the issue in this case. *See State v. Barnes*, 243 N.C. 174, 90 S.E. 2d 321 (1955) (per curiam) (not error for judge to instruct jury to make a diligent effort to reach a verdict without doing violence to conscience after a juror spontaneously stated that the jury was divided ten to two in favor of conviction); *State v. Bowers*, 273 N.C. 652, 161 S.E. 2d 11 (1968) (error for trial judge to instruct jury that it must reach a verdict).

S.E. 2d at 795. *See Jenkins v. United States*, 380 U.S. 445, 446 (1965).

The Court of Appeals has correctly pointed out that inquiries into the division of the jury are often "useful in timing recesses, in determining whether there has been progress toward a verdict, and in deciding whether to declare a mistrial because of a deadlocked jury." *Yarborough*, 64 N.C. App. at 502, 307 S.E. 2d at 794-95. The truth of that observation is borne out in this case by the circumstances attendant to the trial court's questioning of the jury. It was late on a Friday afternoon that was the last day of the court term, and the jury had not yet reached a verdict. The trial judge needed to know whether the jury was likely to reach a verdict or was deadlocked. This was necessary so that he would know whether he should plan to resume the trial on Monday and extend the term of court to continue the jurisdiction of the Superior Court. Under the circumstances, the inquiry into the division of the jury aided the trial court in the efficient administration of justice. We conclude that such inquiries into the division of the jury do not interfere with the proper administration of justice and so decline to exercise our supervisory power to make such inquiries reversible error.

## III.

[3] Having resolved the constitutional questions, we next consider whether in the totality of the circumstances the trial court's question concerning the division of the jury was coercive. After a careful review of the record, we find that the inquiry was not coercive and that defendant was not prejudiced in any way.

A review of the questions and comments addressed to the jury by the trial judge reveals that they were polite and did not in any way hint that the court was displeased with the jury for its failure to reach a verdict. Once the division of the jury was ascertained, the court dismissed the jurors until Monday morning with thanks for their patience. They were also admonished not to talk with anyone about the case and not to read, watch, or listen to anything about it in the news media. The jurors were not given the modified *Allen* charge found in N.C. Gen. Stat. § 15A-1235 (1983) until they returned on Monday morning. The jury deliberated with some breaks until 1:10 p.m., at which time it returned a verdict of guilty. This is to be contrasted with *Ellis v. Reed*, in

which the trial judge followed his inquiry into the division of the jury with a substantially stronger version of the *Allen* charge. 596 F. 2d at 1196. The jury retired and deliberated for only eight minutes before returning a verdict of guilty. *Id.* The Fourth Circuit held that in the totality of the circumstances the inquiry into the division of the jury and the *Allen* charge were not coercive. *Id.* at 1200. In *State v. Yarborough*, the Court of Appeals found no coercion when the trial judge, in addition to asking for the division of the jury, asked about the number of ballots and immediately sent the jury back for further deliberations. 64 N.C. App. at 501, 307 S.E. 2d at 794-95. While *Ellis* and *Yarborough* are not binding on this Court they are persuasive, and their holdings strongly suggest that defendant was not prejudiced by the trial judge's question. The evidence in the case at bar simply is not susceptible of any reasonable interpretation that would suggest coercion, and we hold that none occurred.

Based on our review of the record, we hold that defendant has received a fair trial free from prejudicial error.

No error.