STATE OF NORTH CAROLINA v. NORVILLE BUSSEY

No. 712A86

(Filed 5 November 1987)

1. **Criminal Law § 163— additional instructions—failure to object—plain error rule**

   The plain error standard was applicable to additional instructions and remarks by the trial judge following a report that the jury was deadlocked where defendant made no objection to the additional instructions or remarks.

2. **Criminal Law § 122.2— inquiry into numerical division of jury—additional instructions—verdict not coerced**

   The trial court's inquiry into the numerical division of the jury after the jury reported that it was deadlocked was not coercive in the totality of the circumstances, and the court's additional instructions were proper, where the court was confronted with a report of deadlock after the jury had deliberated only a short time on the day the jury first retired; the court made it clear that it did not wish to be told whether the majority favored guilt or innocence; the court was at all times respectful of the jury, never impugning its efforts or threatening it with being held for unreasonable periods of time to accomplish a unanimous verdict; and the court's additional instructions followed the language of N.C.G.S. § 15A-1235.

State v. Bussey

3. **Criminal Law § 122.2— numerical division of jury—court's remark about "making progress"**

   Where the trial court was informed on the first day of deliberations that the numerical division of the jury was eight to four and, upon asking the second day if there had been any change in the jury's position, the court was told that it was then nine to three, the court's response, "You're making progress," when considered in the context of the court's previous lengthy additional instructions, could only be taken to mean that the jury was making progress toward determining whether it could conscientiously agree on a verdict and was thus not error.

APPEAL by defendant from three concurrent judgments imposing two terms of life imprisonment for convictions of rape in the first degree and sexual offense in the first degree and three years' imprisonment for conviction of common law robbery, entered by *Clark, J.*, at the 7 July 1986 session of Superior Court, CUMBERLAND County. Heard in the Supreme Court 12 October 1987.

*Lacy H. Thornburg, Attorney General, by Steven F. Bryant, Assistant Attorney General, for the state.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Geoffrey C. Mangum, Assistant Appellate Defender, for defendant.*

MARTIN, Justice.

For the reasons stated below, we find the defendant's assignment of error to be without merit and hold that he received a fair trial, free of prejudicial error.

The record reveals that the jury began its deliberations on 9 July 1986 after the court's customary morning break. The jury recessed for lunch and resumed its deliberations. Later, the jury sent word that it wished to pose a question to the court. The forewoman told the trial judge that the jury was "deadlocked." The judge responded by asking whether the jurors had taken any polls and was told that two polls had been taken. He then asked for "the numerical division" on each poll, cautioning the forewoman first that he wanted, "Just numbers, now. How many one side or how many the other, but don't tell me which one is voting for what." The judge was told that the split was eight and four on the first poll and remained so when the second poll was taken following further deliberations after the lunch recess. The judge

then sent the jurors back to continue their deliberations, having advised them as follows:

> Folks, I really would have some serious doubt at this time and this early in your position in your deliberations that you folks would be in a position of deadlock. It would appear to me that it would take considerable more time and discussion of the matters at issue before you before you would be able to determine such a thing as that.

> I realize that you do have before you a case that does offer some rather divergent testimony. As you folks have been earlier advised, it is your duty as jurors to consider that evidence and to resolve these differences if you can and to unanimously agree upon a verdict in the case.

> Now, you all have a duty during your deliberations to consult with one another and to deliberate with a view towards reaching an agreement, if it can be done without violence to your individual judgments.

> Each of you, of course, must decide the case for yourselves but only after an impartial consideration of the evidence with your fellow jurors.

> In the course of deliberations each of you should not hesitate to reexamine your own views and to change your opinion if it is erroneous. But none of you should surrender your honest, conscientious convictions either as to the weight or the affect [sic] of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict in the case.

> Now, I want to emphasize to you the fact that it is your duty to do whatever you can to reach a verdict in this matter. You should reason the matter over together as reasonable men and women, and try to reconcile your differences if you can without the surrender of your conscientious convictions.

> Now, I'm going to let you folks continue your deliberations in the matter and see if you will be able to resolve your differences and come to a unanimous verdict.

The jurors deliberated for the remainder of the afternoon. When the jury returned to the courtroom for the overnight recess, the trial judge inquired, "Has there been any change in the position of your jury that you reported to us earlier?" He was told the split was then nine to three. The judge responded:

> You're making progress. All right. We will stop at this time and let you folks go home for today. We will resume the proceedings tomorrow morning at nine thirty a.m. and let you folks continue your deliberations at that time, and hopefully be able to resolve this matter.

The jury resumed its deliberations the next day and after "some time" returned the verdicts of guilty.

[1] Defendant's sole assignment of error concerns the trial judge's instructions and remarks to the jury following a report by it that it was deadlocked. Because defendant made no objection to the additional instructions or remarks by the trial judge, the plain error standard is applicable. *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983). It is defendant's contention that the judge coerced a guilty verdict, thereby violating defendant's right to a fair trial and an impartial jury under both the federal and state constitutions and N.C.G.S. §§ 15A-1232 and -1235. Because defendant failed to raise the alleged constitutional issues before the trial court, he has waived these arguments, and they may not be raised for the first time in this Court. *State v. Mitchell*, 317 N.C. 661, 346 S.E. 2d 458 (1986); *Wilcox v. Highway Comm.*, 279 N.C. 185, 181 S.E. 2d 435 (1971). We turn then to the question of whether the trial judge's instructions and remarks constitute plain error under the applicable statute and decisions of this Court.

[2] Defendant's case is for all relevant intents and purposes on all fours with *State v. Fowler*, 312 N.C. 304, 322 S.E. 2d 389 (1984), which we find controls its disposition. Defendant resurrects the argument made in *Fowler* that under *Brasfield v. United States*, 272 U.S. 448, 71 L.Ed. 345 (1926), inquiry by the trial judge into the numerical division is prohibited per se because it is coercive of jury minorities. In *Fowler*, we concluded that, "[a]t most, *Brasfield* sets out a rule of federal practice and is not binding on our courts." 312 N.C. at 308, 322 S.E. at 392. In *Fowler*, we also rejected the proposition that a trial judge's ques-

State v. Bussey

tions about the numerical division of a jury constituted a per se violation of article I, § 24 of the North Carolina Constitution. We held, rather, that the proper analysis was whether in considering the totality of the circumstances the inquiry had been coercive, and explained why the judge's ability to inquire into numerical divisions was to be preserved.

> We do not consider questions concerning the division of the jury to be a *per se* violation of Art. I, § 24 when the trial court makes it clear that it does not desire to know whether the majority is for conviction or acquittal. Such inquiries are not inherently coercive, and without more do not violate the right to trial by jury guaranteed by the North Carolina Constitution. *State v. Yarborough*, 64 N.C. App. 500, 502, 307 S.E. 2d 794, 795 (1983). The appropriate standard is whether in the totality of the circumstances the inquiry is coercive. *Ellis*, 596 F. 2d at 1200; *Yarborough*, 64 N.C. App. at 502, 307 S.E. 2d at 795. *See Jenkins v. United States*, 380 U.S. 445, 446 (1965).

> The Court of Appeals has correctly pointed out that inquiries into the division of the jury are often "useful in timing recesses, in determining whether there has been progress toward a verdict, and in deciding whether to declare a mistrial because of a deadlocked jury." *Yarborough*, 64 N.C. App. at 502, 307 S.E. 2d at 794-95. The truth of that observation is borne out in this case by the circumstances attendant to the trial court's questioning of the jury. It was late on a Friday afternoon that was the last day of the court term, and the jury had not yet reached a verdict. The trial judge needed to know whether the jury was likely to reach a verdict or was deadlocked. This was necessary so that he would know whether he should plan to resume the trial on Monday and extend the term of court to continue the jurisdiction of the Superior Court. Under the circumstances, the inquiry into the division of the jury aided the trial court in the efficient administration of justice. We conclude that such inquiries into the division of the jury do not interfere with the proper administration of justice and so decline to exercise our supervisory power to make such inquiries reversible error.

312 N.C. at 308-09, 322 S.E. 2d at 392. Nothing in this case prompts us to alter our view as to the proper standard to be applied in analyzing the propriety of a trial judge's inquiry into the numerical division. We continue to adhere to *Fowler.*

We hold that in the totality of the circumstances the challenged inquiry was not coercive of the jury's verdict. The record shows that the presiding judge made it perfectly clear from the outset that he did not wish to be told whether the majority favored guilt or innocence. He was at all times respectful of the jury, never impugning its efforts or threatening it with being held for unreasonable periods of time to accomplish a unanimous verdict. The judge was confronted with a report of deadlock after rather scant deliberation on either side of the lunch recess on the day the jury first retired. He properly exercised his discretion to hold the jurors to their duty to deliberate thoroughly together before concluding that they were indeed unable to agree. The judge's additional instructions in response to the first inquiry of the jury hew closely to the language of N.C.G.S. § 15A-1235. They are notable for the balance he achieved between recalling the jurors to their duty to deliberate fully and reminding them that their duty also required them to stand fast for their convictions after full reflection. Nor is there the slightest reference in his remarks to burdens on the administration of justice, to wasted court resources, or to the necessity of empanelling another jury in the event of a mistrial. The trial judge's instructions and remarks were well within the rules established in *State v. Fowler*, 312 N.C. 304, 322 S.E. 2d 389, and *State v. Alston*, 294 N.C. 577, 243 S.E. 2d 354 (1978).

[3] The trial judge held a second, very brief colloquy with the jury on the second day of its deliberations. Upon asking if there had been any change in its position, he was told that the division was then nine to three. The judge responded, "You're making progress." This remark, if taken out of context, might be considered of questionable propriety. In the context of the court's previous lengthy additional instructions, however, the remark could only be taken to mean that the jury was making progress towards determining whether it could conscientiously agree on a verdict. The judge's final remark to the jurors as he sent them home for their overnight recess was that he hoped that when they returned they would "be able to resolve the matter." He

thus again made it clear that what he sought was resolution after full reflection, not one outcome or another. Although we find the trial judge's remark about "making progress" does not constitute error, much less plain error, the better practice would be for trial judges to refrain from using such expressions.

No error.