STATE OF NORTH CAROLINA v. JOHN FORREST

No. 705A86

(Filed 2 December 1987)

1. Homicide § 24.1— shooting terminally ill parent—instructions on malice

In a murder prosecution where defendant had shot and killed his incurably and terminally ill father, the trial court did not err by instructing the jury that it could infer from the use of a deadly weapon that the killing was unlawful and committed with malice, and did not instruct the jury that malice should be presumed.

2. Homicide § 27.1— shooting of terminally ill parent—instructions—heat of passion doctrine

In a murder prosecution arising from defendant's shooting of his terminally ill father, the trial court's instruction on malice was not incomplete in that it failed to define "just cause, excuse, or justification." The "heat of passion" doc-

trine is meant to reduce murder to manslaughter where defendant kills without premeditation and deliberation and without malice, but under the heat of passion suddenly aroused which makes the mind temporarily incapable of reflection. This defendant, though clearly upset by his father's condition, indicated by his actions and his statements that his crime was premeditated and deliberate.

### 3. Homicide § 23.1— instructions—definition of malice

The trial judge did not err in its instruction on malice in a first degree murder prosecution by failing to explicitly and specifically qualify the particular definition of malice as "that condition of mind that prompts a person to take the life of another intentionally" with the phrase "without just cause, excuse or justification." The instruction given was consistent with the N.C. Pattern Jury Instructions, has been approved by the Supreme Court on numerous occasions, and is in essence the same as that which defendant argues.

### 4. Homicide § 18.1— killing of terminally ill parent—evidence of premeditation and deliberation—sufficient

There was sufficient evidence of premeditation and deliberation to submit a first degree murder charge to the jury where it was clear that the seriously ill deceased did nothing to provoke defendant's action; the deceased was lying helpless in a hospital bed when defendant shot him four separate times; defendant's revolver was a five-shot single-action gun which had to be cocked each time before it could be fired; although defendant testified that he always carried the gun in his job as a truck driver, he was not working on the day in question; and defendant stated after the incident that he had thought about putting his father out of his misery because he knew he was suffering, that he had promised his father that he would not let him suffer, and that he could not stand to see his father suffer any more.

### 5. Criminal Law § 122.2— divided jury—inquiry into division—additional instructions— no error

The trial court did not err in a murder prosecution by inquiring into the numerical division of the jury or in its instructions to the jury about deliberating toward a verdict where the inquiry and instructions were not coercive when viewed in the totality of the circumstances.

Chief Justice Exum dissenting.

BEFORE *Cornelius, J.,* and a jury at the 30 June 1986 Special Criminal Session of Superior Court, MOORE County, defendant was convicted of first-degree murder. From that conviction and the subsequent imposition of a sentence of life imprisonment entered by *Judge Cornelius,* defendant appeals as of right pursuant to N.C.G.S. § 7A-27(a). Heard in the Supreme Court 13 October 1987.

*Lacy H. Thornburg, Attorney General, by William P. Hart, Assistant Attorney General, for the State.*

*Van Camp, Gill, Bryan & Webb, P.A., by James R. Van Camp, for defendant-appellant.*

MEYER, Justice.

Defendant was convicted of the first-degree murder of his father, Clyde Forrest. The State having stipulated before trial to the absence of any statutory aggravating factors under N.C.G.S. § 15A-2000, the case was tried as a noncapital case, and defendant was sentenced accordingly to life imprisonment. In his appeal to this Court, defendant brings forward three assignments of error relative to the guilt-innocence phase of his trial. Having considered the entire record and each of these assignments in turn, we find no error in defendant's trial. We therefore leave undisturbed defendant's conviction and life sentence.

The facts of this case are essentially uncontested, and the evidence presented at trial tended to show the following series of events. On 22 December 1985, defendant John Forrest admitted his critically ill father, Clyde Forrest, Sr., to Moore Memorial Hospital. Defendant's father, who had previously been hospitalized, was suffering from numerous serious ailments, including severe heart disease, hypertension, a thoracic aneurysm, numerous pulmonary emboli, and a peptic ulcer. By the morning of 23 December 1985, his medical condition was determined to be untreatable and terminal. Accordingly, he was classified as "No Code," meaning that no extraordinary measures would be used to save his life, and he was moved to a more comfortable room.

On 24 December 1985, defendant went to the hospital to visit his ailing father. No other family members were present in his father's room when he arrived. While one of the nurse's assistants was tending to his father, defendant told her, "There is no need in doing that. He's dying." She responded, "Well, I think he's better." The nurse's assistant noticed that defendant was sniffing as though crying and that he kept his hand in his pocket during their conversation. She subsequently went to get the nurse.

When the nurse's assistant returned with the nurse, defendant once again stated his belief that his father was dying. The

nurse tried to comfort defendant, telling him, "I don't think your father is as sick as you think he is." Defendant, very upset, responded, "Go to hell. I've been taking care of him for years. I'll take care of him." Defendant was then left alone in the room with his father.

Alone at his father's bedside, defendant began to cry and to tell his father how much he loved him. His father began to cough, emitting a gurgling and rattling noise. Extremely upset, defendant pulled a small pistol from his pants pocket, put it to his father's temple, and fired. He subsequently fired three more times and walked out into the hospital corridor, dropping the gun to the floor just outside his father's room.

Following the shooting, defendant, who was crying and upset, neither ran nor threatened anyone. Moreover, he never denied shooting his father and talked openly with law enforcement officials. Specifically, defendant made the following oral statements: "You can't do anything to him now. He's out of his suffering." "I killed my daddy." "He won't have to suffer anymore." "I know they can burn me for it, but my dad will not have to suffer anymore." "I know the doctors couldn't do it, but I could." "I promised my dad I wouldn't let him suffer."

Defendant's father was found in his hospital bed, with several raised spots and blood on the right side of his head. Blood and brain tissue were found on the bed, the floor, and the wall. Though defendant's father had been near death as a result of his medical condition, the exact cause of the deceased's death was determined to be the four point-blank bullet wounds to his head. Defendant's pistol was a single-action .22-calibre five-shot revolver. The weapon, which had to be cocked each time it was fired, contained four empty shells and one live round.

At the close of the evidence, defendant's case was submitted to the jury for one of four possible verdicts: first-degree murder, second-degree murder, voluntary manslaughter, or not guilty. After a lengthy deliberation, the jury found defendant guilty of first-degree murder. Judge Cornelius accordingly sentenced defendant to the mandatory life term.

Defendant assigns three specific errors relative to his conviction at trial: first, that the trial court committed reversible error

in its instruction to the jury concerning the issue of malice; second, that the trial court committed reversible error in its submission of the first-degree murder charge to the jury because there was insufficient evidence of premeditation and deliberation; third and finally, that the trial court committed reversible error when, during jury deliberation, it inquired into the jury's numerical division and subsequently instructed the jury about deliberating toward a verdict. We deal with each assignment of error in turn.

I.

[1]   In his first assignment of error, defendant asserts that the trial court committed reversible error in its instruction to the jury concerning the issue of malice. Defendant makes three specific arguments in support of his position on this assignment of error. First, states defendant, the instruction permitting an inference of malice from the use of a deadly weapon on these particular facts constituted an impermissible shift of the burden of persuasion on the issue of malice to defendant. Second, continues defendant, the trial court erred in giving incomplete instructions on the element of malice and in thereby improperly suggesting that the mitigating evidence presented at trial neither negated malice nor showed heat of passion. Third, concludes defendant, the trial court erred more generally in giving instructions on malice which were simply erroneous and misleading. We find each of defendant's arguments unpersuasive, and we therefore overrule this assignment of error.

On the issue of malice, the trial court consistently instructed the jury as follows:

Malice means not only hatred, ill-will or spite, as it is ordinarily understood; to be sure that's malice. But it also means that condition of the mind that prompts a person to take the life of another intentionally, or to intentionally inflict serious bodily harm which proximately results in his death without just cause, excuse or justification.

If the State proves beyond a reasonable doubt that the defendant killed the victim with a deadly weapon, or intentionally inflicted a wound upon the victim with a deadly weapon that proximatley [sic] caused the victim's death you may infer, first, that the killing was unlawful. Second, that it

was done with malice. But you are not compelled to do so. You may consider this, along with all other facts and circumstances in determining whether the killing was unlawful and whether it was done with malice.

I charge that it is not a legal defense to the offense of murder if the defendant, John Forrest, at the time of the shooting believed his father, Clyde Forrest, to be terminally ill or in danger of immediate death. But you may consider such belief in determining whether the killing was done with malice.

It is this instruction to which defendant now assigns error.

Defendant first argues that, on the particular facts of this case, the trial court's instruction permitting an inference of malice from the use of a deadly weapon improperly shifted the burden of persuasion on the issue of malice to defendant. Here, claims defendant, where the facts presented tended to show a distraught son who wanted merely to end his father's suffering, the evidence in fact negated the element of malice. According to defendant, there was no rational connection here between the fact proved (intentional use of a dangerous weapon) and the fact inferred (malice). Therefore, concludes defendant, use of an inference under these circumstances was tantamount to shifting the burden of persuasion to defendant, because first, the jury was encouraged to draw the inference regardless of any other evidence presented, and second, it was told, in effect, that the inference could not be overcome — that the direct evidence was not a "legal defense." We cannot agree.

The instruction employed by the trial court is in accord with the North Carolina Pattern Jury Instructions and with extensive North Carolina case law. *See State v. Reynolds*, 307 N.C. 184, 297 S.E. 2d 532 (1983); *State v. Patterson*, 297 N.C. 247, 254 S.E. 2d 604 (1979). Significantly, the trial court did not instruct the jury that malice should be *presumed.* On the contrary, the trial court instructed the jury that it *"may infer"* that the killing was unlawful and committed with malice, but that it was not compelled to do so. The trial court properly instructed the jury that it should consider this permissive inference along with all the other facts and circumstances, including defendant's belief that his father was terminally ill or in danger of immediate death, in

deciding whether the State had proven malice beyond a reasonable doubt. Defendant's first argument therefore lacks merit.

[2]   Defendant argues second that the trial court erred in giving incomplete instructions on the issue of malice, thereby improperly suggesting that any mitigating evidence presented did not negate malice or show heat of passion. While conceding that the instruction here was technically correct, defendant claims that it was nevertheless inadequate and misleading in that it failed to define what was meant by the phrase "just cause, excuse or justification." According to defendant, there is abundant evidence in the record that, upon seeing his father at the hospital, he was overwhelmed by the futile, horrible suffering before him and that, in a highly emotional state, he killed to bring relief to the man he deeply loved. The jury instruction employed by the trial court, concludes defendant, because it did not instruct on heat of passion, for all intents and purposes precluded the jury from considering these critical facts in mitigation of the offense. We do not agree with defendant, and we hold that a heat of passion jury instruction on facts such as those of the case at bar is improper.

In essence, defendant asks this Court to hold that his extreme distress over his father's suffering was adequate provocation, as in the "heat of passion" doctrine, to negate the malice element required for a murder conviction. Our Court has held on numerous occasions that, under certain circumstances, one who kills another human being in the "heat of passion," produced by adequate provocation sufficient to negate malice, is guilty of manslaughter rather than murder. *State v. Robbins*, 309 N.C. 771, 309 S.E. 2d 188 (1983); *State v. Jones*, 299 N.C. 103, 261 S.E. 2d 1 (1979). A killing in the "heat of passion" on sudden and adequate provocation means a killing without premeditation under the influence of a sudden passion which renders the mind incapable of cool reflection. *State v. Jones*, 299 N.C. 103, 261 S.E. 2d 1; *State v. Jennings*, 276 N.C. 157, 171 S.E. 2d 447 (1970).

Significantly, our Court has narrowly construed the requirement under the "heat of passion" doctrine that provocation be adequate and reasonable. We have held, for example, that mere words or insulting language, no matter how abusive, can never be adequate provocation and can never reduce murder to manslaughter under the "heat of passion" doctrine. *State v. McCray*, 312

N.C. 519, 324 S.E. 2d 606 (1985); *State v. Montague*, 298 N.C. 752, 259 S.E. 2d 899 (1979). We have held as adequate provocation an assault or threatened assault, *State v. Montague*, 298 N.C. 752, 259 S.E. 2d 899; *State v. Williams*, 296 N.C. 693, 252 S.E. 2d 739 (1979), and the discovery of the deceased spouse and a paramour in the act of intercourse, *State v. Ward*, 286 N.C. 304, 210 S.E. 2d 407, *vacated in part* 428 U.S. 903, 49 L.Ed. 2d 1207 (1974).

We are unwilling to hold that, as in the case at bar, where defendant kills a loved one in order to end the deceased's suffering, adequate provocation to negate malice is necessarily present. The "heat of passion" doctrine is meant to reduce murder to manslaughter when defendant kills without premeditation and deliberation and without malice, but rather under the influence of the heat of passion suddenly aroused which renders the mind temporarily incapable of cool reflection. *State v. Jones*, 299 N.C. 103, 261 S.E. 2d 1. Here, irrefutable proof of premeditation and deliberation is clearly present. This defendant, though clearly upset by his father's condition, indicated by his actions and his statements that his crime was premeditated and deliberate.

The instruction employed by the trial court was correct, and we reject this second of defendant's arguments that the jury instructions constitute reversible error.

[3] Defendant argues third that the trial court committed reversible error in giving instructions on the issue of malice which were erroneous and generally misleading. Defendant's objection here is essentially a grammatical one and is directed at that portion of the jury instruction which reads as follows:

[Malice] also means that condition of the mind that prompts a person to take the life of another intentionally, . . . without just cause, excuse or justification.

The trial court, argues defendant, failed to explicitly and specifically qualify the particular definition of malice as "that condition of the mind that prompts a person to take the life of another intentionally" with the important phrase "without just cause, excuse or justification." This, claims defendant, almost certainly led the jury to conclude that the intentional shooting alone required them to find malice, despite any evidence to the contrary. The

trial court, adds defendant, should have defined malice in its instruction as follows:

That condition of the mind which prompts a person, without just cause, excuse or justification to take the life of another intentionally

or

to intentionally inflict serious bodily harm which proximately results in his death.

We do not agree, and we therefore decline defendant's invitation to adopt a new jury instruction concerning the issue of malice. The instruction employed by the trial court is consistent with the North Carolina Pattern Jury Instructions and is the very instruction we have previously expressly approved on numerous occasions. *State v. Reynolds*, 307 N.C. 184, 297 S.E. 2d 532; *State v. Patterson*, 297 N.C. 247, 254 S.E. 2d 604. Moreover, the instruction used at trial is, on its face, in essence the same as that for which defendant argues. Defendant's third argument in support of this assignment of error is without merit, and the assignment as a whole is hereby overruled.

## II.

[4] In his second assignment of error, defendant asserts that the trial court committed reversible error in denying his motion for directed verdict as to the first-degree murder charge. Specifically, defendant argues that the trial court's submission of the first-degree murder charge was improper because there was insufficient evidence of premeditation and deliberation presented at trial. We do not agree, and we therefore overrule defendant's assignment of error.

We recently addressed this very issue in the case of *State v. Jackson*, 317 N.C. 1, 343 S.E. 2d 814 (1986). Our analysis of the relevant law in that case is instructive in the case at bar:

Before the issue of a defendant's guilt may be submitted to the jury, the trial court must be satisfied that substantial evidence has been introduced tending to prove each essential element of the offense charged and that the defendant was the perpetrator. *State v. Hamlet*, 312 N.C. 162, 321 S.E. 2d 837 (1984); *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980).

Substantial evidence must be existing and real, but need not exclude every reasonable hypothesis of innocence. *State v. Williams*, 308 N.C. 47, 301 S.E. 2d 335, *cert. denied*, 464 U.S. 865, 78 L.Ed. 2d 177, *reh'g denied*, 464 U.S. 1004, 78 L.Ed. 2d 704 (1983). In considering a motion to dismiss, the trial court must examine the evidence in the light most favorable to the State, and the State is entitled to every reasonable intendment and inference to be drawn therefrom. *State v. Hamlet*, 312 N.C. 162, 321 S.E. 2d 837; *State v. Bright*, 301 N.C. 243, 271 S.E. 2d 368 (1980). Contradictions and discrepancies in the evidence are for the jury to resolve and do not warrant dismissal. *State v. Brown*, 315 N.C. 40, 337 S.E. 2d 808 (1985); *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114.

First-degree murder is the intentional and unlawful killing of a human being with malice and with premeditation and deliberation. *State v. Fleming*, 296 N.C. 559, 251 S.E. 2d 430 (1979); N.C.G.S. § 14-17 (1981 and Cum. Supp. 1985). Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation. *State v. Brown*, 315 N.C. 40, 337 S.E. 2d 808; *State v. Myers*, 299 N.C. 671, 263 S.E. 2d 768 (1980). Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation. *State v. Hamlet*, 312 N.C. 162, 321 S.E. 2d 837; *State v. Bush*, 307 N.C. 152, 297 S.E. 2d 563 (1982). The phrase "cool state of blood" means that the defendant's anger or emotion must not have been such as to overcome his reason. *State v. Myers*, 299 N.C. 671, 263 S.E. 2d 768.

Premeditation and deliberation relate to mental processes and ordinarily are not readily susceptible to proof by direct evidence. Instead, they usually must be proved by circumstantial evidence. *State v. Buchanan*, 287 N.C. 408, 215 S.E. 2d 80 (1975). Among other circumstances to be considered in determining whether a killing was with premeditation and deliberation are: (1) want of provocation on the part of the deceased; (2) the conduct and statements of the defendant before and after the killing; (3) threats and declarations of the

defendant before and during the course of the occurrence giving rise to the death of the deceased; (4) ill-will or previous difficulty between the parties; (5) the dealing of lethal blows after the deceased has been felled and rendered helpless; and (6) evidence that the killing was done in a brutal manner. *State v. Brown,* 315 N.C. 40, 337 S.E. 2d 808; *State v. Williams,* 308 N.C. 47, 301 S.E. 2d 335, *cert. denied,* 464 U.S. 865, 78 L.Ed. 2d 117, *reh'g denied,* 464 U.S. 1004, 78 L.Ed. 2d 704. We have also held that the nature and number of the victim's wounds is a circumstance from which premeditation and deliberation can be inferred. *State v. Bullard,* 312 N.C. 129, 322 S.E. 2d 370 (1984); *State v. Brown,* 306 N.C. 151, 293 S.E. 2d 569, *cert. denied,* 459 U.S. 1080, 74 L.Ed. 2d 642 (1982).

*Jackson,* 317 N.C. at 22-23, 343 S.E. 2d at 827.

As in *Jackson,* we hold in the present case that there was substantial evidence that the killing was premeditated and deliberate and that the trial court did not err in submitting to the jury the question of defendant's guilt of first-degree murder based upon premeditation and deliberation. Here, many of the circumstances that we have held to establish a factual basis for a finding of premeditation and deliberation are present. It is clear, for example, that the seriously ill deceased did nothing to provoke defendant's action. Moreover, the deceased was lying helpless in a hospital bed when defendant shot him four separate times. In addition, defendant's revolver was a five-shot single-action gun which had to be cocked each time before it could be fired. Interestingly, although defendant testified that he always carried the gun in his job as a truck driver, he was not working on the day in question but carried the gun to the hospital nonetheless.

Most persuasive of all on the issue of premeditation and deliberation, however, are defendant's own statements following the incident. Among other things, defendant stated that he had thought about putting his father out of his misery because he knew he was suffering. He stated further that he had promised his father that he would not let him suffer and that, though he did not think he could do it, he just could not stand to see his father suffer any more. These statements, together with the other circumstances mentioned above, make it clear that the trial court did not err in submitting to the jury the issue of first-

degree murder based upon premeditation and deliberation. Accordingly, defendant's second assignment of error is overruled.

## III.

[5] In his third assignment of error, defendant asserts that the trial court committed reversible error when it inquired into the numerical division of the deliberating jury and when it subsequently instructed the jury about deliberating toward a verdict. Defendant claims that the trial court's actions taken in context were sufficiently coercive of the jury as to deny him a fair trial. We have recently addressed this very issue in a similar case, and we simply do not agree.

During its deliberation at trial, the jury returned to the courtroom on several occasions with a specific question. On one such occasion, the exchange between the trial court and the jury proceeded as follows:

[COURT]: Mrs. Kelly, as Foreperson of the jury, you have submitted a question to the Court. You have indicated that you are unable at this time to come to a unanimous decision. You would like the Court to advise you. Is that your question?

FOREPERSON: Yes, sir.

COURT: Listen very carefully to what I ask you. I'm going to ask you the numerical division. I don't want you to tell me which way; just tell me the division numberwise the way the jury is now constituted.

FOREPERSON: You mean in numbers?

COURT: Yes, ma'm [sic].

FOREPERSON: Eleven to one.

COURT: And has that number remained the same throughout the proceedings, or has it shifted from time to time?

FOREPERSON: No, sir. It has been constant.

COURT: Members of the jury, your Foreperson has indicated that you've been unable to reach a verdict at this particular point. The Court wants to emphasize the fact that it is your duty to do whatever you can to reach a verdict

in this matter. You should reason the matter over together as reasonable men and women and to reconcile your differences if you can without the surrendering of your conscientious convictions. But no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of a fellow juror, or for the mere purpose of returning a verdict. The Court will now let you return to the jury room to continue with your deliberations, and when you've reached a unanimous verdict—please see if you can reach a unanimous verdict. If you can please knock on the door.

It was this inquiry and instruction by the trial court to which defendant now assigns error.

The disposition of defendant's assignment of error is controlled by our recent decision in the very similar case of *State v. Bussey*, 321 N.C. 92, 361 S.E. 2d 564 (1987). There, as here, defendant challenged the trial court's inquiry into the numerical division of the deliberating jury and its instruction concerning deliberating further toward a verdict. In *Bussey*, we reaffirmed our holding in *State v. Fowler*, 312 N.C. 304, 322 S.E. 2d 389 (1984), that such cases are to be decided by employing a totality of the circumstances test. *Bussey*, 321 N.C. 92, 361 S.E. 2d 564. Therefore, the proper analysis here is whether, upon consideration of the totality of the circumstances, the inquiry and instruction of the trial court were unduly coercive.

As in *Bussey*, we hold here that, when viewed in the totality of the circumstances, the challenged inquiry and instruction were not coercive of the jury's verdict. Our exact analysis in *Bussey* is appropriate in the case at bar as well:

The record shows that the presiding judge made it perfectly clear from the outset that he did not wish to be told whether the majority favored guilt or innocence. He was at all times respectful of the jury, never impugning its efforts or threatening it with being held for unreasonable periods of time to accomplish a unanimous verdict. The judge was confronted with a report of deadlock . . . . He properly exercised his discretion to hold the jurors to their duty to deliberate thoroughly together before concluding that they were indeed unable to agree. The judge's additional instructions in re-

sponse to the first inquiry of the jury hew closely to the language of N.C.G.S. § 15A-1235. They are notable for the balance he achieved between recalling the jurors to their duty to deliberate fully and reminding them that their duty also required them to stand fast for their convictions after full reflection. Nor is there the slightest reference in his remarks to burdens on the administration of justice, to wasted court resources, or to the necessity of empanelling another jury in the event of a mistrial. The trial judge's instructions and remarks were well within the rules established in *State v. Fowler*, 312 N.C. 304, 322 S.E. 2d 389, and *State v. Alston*, 294 N.C. 577, 243 S.E. 2d 354 (1978).

*Id.* at 97, 361 S.E. 2d at 567.

In oral argument, defendant placed particular emphasis upon the final two sentences of the trial court's instruction to the jury, claiming that this amounted to pleading by the court that the jury reach a verdict. Specifically, the court concluded its instruction to the jury as follows:

The Court will now let you return to the jury room to continue with your deliberations, and when you've reached a unanimous verdict—please see if you can reach a unanimous verdict. If you can please knock on the door.

Assuming, *arguendo*, as defendant argues, that these two sentences, if taken out of context, might be considered of questionable propriety, we find that, in the context of the court's total instruction and, in particular, of its admonishment to the jury that no juror should surrender any conscientious convictions, this passage is not coercive and does not constitute error in the court's instructions.

In conclusion, having reviewed the record and each of defendant's assignments of error, we find that defendant had a fair trial, free of prejudicial error. Accordingly, we leave undisturbed defendant's conviction of the first-degree murder of Clyde Forrest and his sentence of life imprisonment.

No error.

Chief Justice EXUM dissenting.

Almost all would agree that someone who kills because of a desire to end a loved one's physical suffering caused by an illness which is both terminal and incurable should not be deemed in law as culpable and deserving of the same punishment as one who kills because of unmitigated spite, hatred or ill will. Yet the Court's decision in this case essentially says there is no legal distinction between the two kinds of killing. Our law of homicide should not be so roughly hewn as to be incapable of recognizing the difference. I believe there are legal principles which, when properly applied, draw the desirable distinction and that both the trial court and this Court have failed to recognize and apply them.

The difference, legally, between the two kinds of killings hinges on the element of malice, the former being without, and the latter with, malice. The absence of malice, however, does not mean the killing is justified or excused so as not to be unlawful; it means simply that the killing is mitigated so as not to be murder but manslaughter. Our cases have traditionally recognized the distinction between mitigation and excuse in the law of homicide. *State v. Hankerson*, 288 N.C. 632, 220 S.E. 2d 575 (1975), and cases therein cited and discussed.

The error in the trial court's instructions stems from the failure to recognize this difference between mitigation and excuse. The trial court instructed that malice was "that condition of mind that prompts a person to take the life of another intentionally . . . without just cause, excuse or justification." This instruction, correct insofar as it goes, is incomplete. The trial court should have added "and without mitigation."

Failure to include circumstances in mitigation as capable of rebutting malice, in effect, precluded the jury from considering at all defendant's reasons for killing his father on the issue of whether he acted with malice. The instructions were that only matters which excused the killing altogether were sufficient to rebut the element of malice. The trial court then told the jury that defendant's reasons for killing his father would not excuse the killing, saying,

> I charge that it is not a legal defense to the offense of murder if the defendant, John Forrest, at the time of the shooting believed his father, Clyde Forrest, to be terminally ill or in danger of immediate death.

Although the trial court followed this immediately with, "But you may consider such belief in determining whether the killing was done with malice," he gave the jury no theory by which the circumstances might in law rebut the inference of malice which arose from the intentional killing with a deadly weapon. In essence this instruction was superfluous because the jury had already been told that only legal defenses, as opposed to circumstances in mitigation, could be considered on the issue of malice. At best the instructions were conflicting on the crucial element in the case. Ordinarily this kind of error calls for a new trial. *State v. Parrish*, 275 N.C. 69, 165 S.E. 2d 230 (1969).

The jury's confusion concerning the malice instructions is revealed by their three requests that the trial court repeat them and the trial court's finally submitting them to the jury in writing.

For this error in the trial court's instructions, I vote to give defendant a new trial.