JOHN, Judge.
Sammy L. Whittington ("defendant") appeals the trial court's judgment entered upon his conviction by a jury of second degree murder. For the reasons discussed herein, we hold that defendant received a trial free of prejudicial error.
The State's evidence presented at trial tends to show the following: In March 2003, defendant lived in Spring Lake, North Carolina, with his wife, Patricia Whittington ("Patricia"), and his son, Jamel Whittington ("Jamel"). On the night of 21 March 2003, defendant returned home from work and began arguing with Patricia over a bill. During the argument, Patricia told defendant she was planning to leave him. At that time, Patricia was in the living room of the residence and defendant was in a bedroom. As the couple continued to argue, defendant retrieved a metal pipe from a nearby bathroom and approached Patricia from behind. Defendant struck Patricia in the side of the head with the pipe and, after she fell to the floor, continued to strike her with the pipe. At approximately 12:15 a.m. on 22 March 2003, defendant called "911" and informed the emergency telecommunicator he had "just killed his wife" and "needed some help."
Harnett County Sheriff's Department Sergeant Thomas Parker ("Sergeant Parker") was the first law enforcement officer to arrive at the scene. He observed defendant smoking a cigarette and sitting on the front porch. Sergeant Parker inquired if there was "a problem." Defendant replied he "had just killed his wife." Inside the residence, Sergeant Parker saw Jamel sitting near "a pool of blood." After removing Jamel, Sergeant Parker discovered Patricia lying on the back steps of the residence, "partially in the door but mostly out" of it. Sergeant Parker subsequently handcuffed defendant and placed him in the patrol car. Shortly thereafter, emergency medical personnel arrived and pronounced Patricia dead.
Upon further investigation, law enforcement officials located the metal pipe and additional blood stains in the living room of the residence. They also noted a "trail of blood" leading from the living room into the kitchen, indicating Patricia had been dragged from the living room and towards the rear door. Patricia's body was wrapped in a bloodstained blanket, and the officers observed a pillow case stained with blood and brain matter, a towel, and a rag nearby.
Defendant was transported to the Harnett County Law Enforcement Center. Following his execution of a waiver of rights form, he was interviewed by Harnett County Sheriff's Department Detective Bernice Smith ("Detective Smith") and Lieutenant Johnny Hawley ("Lieutenant Hawley"). Detective Smith's narration of the interview, which was read to, initialed, and signed by defendant, contains the following statements:
Patricia was in the other part of the trailer. She told defendant she was going to leave him. He got up and got the pipe and after getting the pipe he walked back to the living room where Patricia was at.
Defendant advises that her head was turned away from him and she did not see him coming toward her and he swung the pipe striking her on the side of the head, she went down, she had begun to cry and he swung again while she was laying face down on the floor. Defendant states that he struck Patricia seven times, she did not say anything she only cried, she did not put her hands up around her head or anything. He stopped hitting her because she stopped moving.
. . . .
Defendant then went to the master bedroom and got the cover off the bed and took the cover into the living room and wrapped Patricia up and he dragged her body to the back door of their home and was going to bury her out in the yard and he thought to himself, no that's not right I need to do the right thing and he called 911 and told them what he had done. Defendant then waited for the officers to arrive.
On 7 April 2003, defendant was indicted upon a charge of first degree murder. Prior to trial and pursuant to defendant's "Notice of Intention to Use Insanity Defense," Judge Ola M. Lewis conducted a hearing regarding defendant's capacity to proceed in the matter. Following the presentation of evidence and argument by both parties, Judge Lewis found defendant capable of proceeding to trial in a nunc pro tunc order entered 2 August 2004 ("the order").
At trial, subsequent to the State's presentation of evidence, defendant presented evidence tending to show he was either legally insane at the time of the commission of the crime or mentally incapable of premeditating, deliberating, and forming the specific intent to kill Patricia. The trial court submitted the offenses of first and second degree murder in its jury charge, and the jury returned a verdict of guilty of second degree murder on 30 July 2004. After determining defendant had two prior record points and prior felony record II, the trial court imposed a sentence of 189 to 236 months imprisonment. Defendant appeals.
The issues on appeal are whether the trial court erred by: (I) concluding defendant was competent to stand trial; (II) preventing members of the public from entering or exiting the courtroom during the trial; (III) refusing to instruct the jury on voluntary manslaughter; and (IV) sentencing defendant to a term of 189 to 236 months imprisonment.
On the issue of competency to stand trial, defendant maintains the order should be reversed because Judge Lewis failed to include specific findings of fact to support her conclusions of law. We disagree. N.C. Gen. Stat. § 15A-1001(a) (2003) provides in pertinent part as follows:
No person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner.
N.C. Gen. Stat. § 15A-1002(b) (2003) states that "when the capacity of the defendant to proceed is questioned, the court shall hold a hearing to determine the defendant's capacity to proceed." "The issue of the defendant's capacity to proceed may be resolved by the trial court with or without the aid of a jury." State v. Jackson, 302 N.C. 101, 104, 273 S.E.2d 666, 669 (1981) (citing State v. Willard, 292 N.C. 567, 234 S.E.2d 587 (1977)). When ruling without input from a jury, "it is the court's duty to resolve conflicts in the evidence; the court's findings of fact are conclusive on appeal if there is competent evidence to support them, even if there is also evidence to the contrary." State v. Heptinstall, 309 N.C. 231, 234, 306 S.E.2d 109, 111 (1983).
As noted above, Judge Lewis resolved the issue of defendant's capacity to proceed without a jury. On appeal, defendant does not challenge the sufficiency of the evidence supporting the order's findings of fact. Rather, defendant insists the order must be reversed because it fails to contain specific findings of fact that defendant was able "to understand the nature and object of the proceedings against him," able "to comprehend his own situation in reference to the proceedings," and able "to assist in his defense in a rational or reasonable manner." Defendant's first argument is unavailing.
The order included the following, denominated as "conclusions of law":
1. This court reviewed all the transcripts of the proceedings on 10 December 2003 and 16 December 2003,
2. Pursuant to State v. Silvers, 323 NC 646 (1989) this court relied upon testimony of expert and lay witnesses who had observed, conversed with and dealt with defendant and had a reasonable opportunity to form an opinion as to defendant's mental capacity,
. . . .
8. The test pursuant to North Carolina General Statutes 15A-1001 is:
a. Whether defendant is able to understand the nature and object of the proceedings against him,
b. Whether defendant is able to comprehend his own situation in these proceedings, and
c. Whether defendant is able to assist in his own defense in a rational and reasonable manner,
9. This court finds after reviewing the evidence presented, the testimony, transcripts of the proceedings, records presented that the defendant is able to:
a. Understand the nature and object of the proceedings against him,
b. Comprehend his own situation in these proceedings, and
c. Assist in his own defense in a rational and reasonable manner.
The foregoing amply reflects consideration of the evidence introduced by the parties and application of the proper legal standard. While several of the conclusions of law may more properly be characterized and denominated as "findings of fact," we are not persuaded that any such mislabeling requires reversal of the order. See State v. Richardson, 316 N.C. 594, 601, 342 S.E.2d 823, 829 (1986) ("Defendant has not shown that he has been prejudiced by the fact that the trial court's conclusions of law were incorrectly denominated as findings of fact."). Further, review of the transcript reveals competent evidence supporting Judge Lewis' determination regarding defendant's capacity to proceed. See State v. Reid, 38 N.C. App. 547, 548-49, 248 S.E.2d 390, 391 (1978), disc. review denied, 296 N.C. 588, 254 S.E.2d 31 (1979) ("The question of defendant's capacity is within the trial judge's discretion and his determination thereof, if supported by the evidence, is conclusive on appeal."). In short, we perceive no abuse of discretion in Judge Lewis' ruling, and defendant's first argument therefore fails.
Defendant next maintains the trial court erred by preventing members of the public from entering or exiting the courtroom during the trial. The instant record reflects that members of the public were prohibited from entering or exiting the courtroom (i) while the jury pool was being instructed on the case, (ii) while the parties were making their closing arguments, and (iii) while the jury's verdict was being read.
Although asserting "there were no findings justifying the closing of the courtroom, and there was no overriding interest in its closure," defendant fails to cite any instance in the record where he objected to the trial court's decision to close the courtroom. See N.C.R. App. P. 10(b)(1) (2005) (in order to properly preserve a question for appellate review, "a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context"); N.C.R. App. P. 10(c)(1) (assignments of error "sufficiently" preserve an issue for appeal only when they "direct the attention of the appellate court to the particular error about which the question is made, with clear and specific record or transcript references"). Failure to object or preserve the issue for appellate review subjects defendant's assignment of error to dismissal. See id.
Assuming arguendo proper preservation of this issue for appeal, moreover, examination of the record herein fails to sustain defendant's argument. First, there is no indication in the record that prohibiting members of the public from entering or exiting the courtroom at specific limited times resulted in a violation of defendant's constitutional rights. See State v. Clark, 324 N.C. 146, 167, 377 S.E.2d 54, 66-67 (1989) (neither Sixth Amendment right to "public trial" nor right to "open" court under N.C. Const. Art. I, § 18 violated where trial court "did not vacate the courtroom nor bar the courtroom door" but rather "warned the spectators of its intention to restrict public egress" during closing arguments). Further, N.C. Gen. Stat. § 15A-1034(a) (2003) provides that "the presiding judge may impose reasonable limitations on access to the courtroom when necessary to ensure the orderliness of courtroom proceedings or the safety of persons present." Contrary to defendant's impression, application of the statutory test to the entire record herein indicates the trial court's actions in prohibiting courtroom ingress and egress at certain critical phases of the trial constituted reasonable limitations on access, aimed at ensuring a fair and impartial jury as well as orderly courtroom proceedings.
In short, we reject defendant's second argument.
Defendant next asserts the trial court erred by refusing to submit an instruction to the jury on the offense of voluntary manslaughter. We do not agree.
Where a defendant is charged with murder,
it is the duty of the trial court to instruct the jury on the law applicable to the substantive features of the case arising on the evidence, and when there is evidence to support the lesser included offense of voluntary manslaughter, the defendant is entitled to have that offense submitted to the jury under proper instructions.
State v. Robbins, 309 N.C. 771, 776-77, 309 S.E.2d 188, 191 (1983) (citation omitted).
"Voluntary manslaughter is the unlawful killing of a human being without malice, express or implied, and without premeditation or deliberation. One who kills a human being while under the influence of passion or in the heat of blood produced by adequate provocation is guilty of manslaughter." State v. Wynn, 278 N.C.513, 518, 180 S.E.2d 135, 139 (1971) (citations omitted).
Defendant contends there was "substantial credible evidence that he was suffering from a mental disorder that the jury could have found to have negated the element of malice" necessary for a conviction on second degree murder and that an instruction on voluntary manslaughter was therefore required. Defendant's argument misses the mark.
Although finding of a mental disorder by the jury may have overcome the element of malice required for second degree murder and thus necessitated a verdict of not guilty on that charge, in order "to reduce the crime of murder to voluntary manslaughter, the defendant must either 'rely on evidence presented by the State or assume a burden to go forward with or produce some evidence of all elements of heat of passion on sudden provocation.'" State v. Long, 87 N.C. App. 137, 141, 360 S.E.2d 121, 123 (1987) (quoting Robbins, 309 N.C. at 777-78, 309 S.E.2d at 192). "A killing in the 'heat of passion' on sudden and adequate provocation means a killing without premeditation under the influence of a sudden passion which renders the mind incapable of cool reflection." State v. Forrest, 321 N.C. 186, 192, 362 S.E.2d 252, 256 (1987) (citations omitted). "'In the definition of manslaughter as homicide committed without premeditation but under the influence of sudden "passion," this term means any of the emotions of the mind known as rage, anger, hatred, furious resentment, or terror, rendering the mind incapable of cool reflection.'" State v. Jennings, 276 N.C. 157, 161, 171 S.E.2d 447, 449-50 (1970) (quoting Black's Law Dictionary, p. 1281 (4th ed. 1951)).
Significantly, our Court has narrowly construed the requirement under the 'heat of passion' doctrine that provocation be adequate and reasonable. We have held, for example, that mere words or insulting language, no matter how abusive, can never be adequate provocation and can never reduce murder to manslaughter under the "heat of passion" doctrine. We have held as adequate provocation an assault or threatened assault, and the discovery of the deceased spouse and a paramour in the act of intercourse. Forrest, 321 N.C. at 192-93, 362 S.E.2d at 256 (citations omitted).
Examining the record for "heat of passion" evidence, we note defendant's statement to law enforcement officials contains several references to "fussing back and forth" between defendant and his wife prior to the homicide as well as her threat to "go out and get up with other men." However, these "mere words" are insufficient to reduce defendant's culpability of the offense of second degree murder. See Forrest, 321 N.C. at 192, 362 S.E.2d at 256. Further, there is no indication defendant was reacting to an assault or threatened assault when he struck Patricia in the head with the pipe. Instead, by his own admission, defendant picked the pipe up and set it back down several times before ultimately attacking Patricia with it.
To summarize, the record contains no evidence that the murder of Patricia occurred while "defendant was in heat of passion caused by legally sufficient provocation." State v. Upright, 72 N.C. App. 94, 102, 323 S.E.2d 479, 485 (1984), disc. review denied, 313 N.C. 513, 329 S.E.2d 400, cert. denied, 313 N.C. 610, 332 S.E.2d 82 (1985). Accordingly, the trial court did not err by denying defendant's request to submit to the jury an instruction on voluntary manslaughter.
Finally, defendant assigns error to the trial court's judgment imposing an active prison term of 189 to 236 months. We hold that the trial court committed no error in this regard.
According to defendant, the sentence is invalid because it stems from a portion of our state's Structured Sentencing Law, N.C. Gen. Stat. § 15A-1340 et seq., at which the corresponding presumptive and aggravated ranges overlap. See N.C. Gen. Stat. § 15A-1340.17(c). Although defendant concedes his argument has consistently been rejected by this Court, see, e.g., State v. Allah, 168 N.C. App. 190, 607 S.E.2d 311, disc. review denied, 359 N.C. 636, 618 S.E.2d 232 (2005); State v. Ramirez, 156 N.C. App. 249, 576 S.E.2d 714, disc. review denied, 357 N.C. 255, 583 S.E.2d 286, cert. denied, 540 U.S. 991, 157 L. Ed. 2d 388 (2003); State v. Streeter, 146 N.C. App. 594, 553 S.E.2d 240 (2001), cert. denied, 356 N.C. 312, 571 S.E.2d 211 (2002), he nonetheless insists the issue should be revisited in light of the United States Supreme Court's decision in Blakely v. Washington, 542 U.S. 296, 159 L. Ed. 2d 403 (2004). The State counters that Blakely, a case concerned with the imposition of aggravated sentences pursuant to findings of aggravating factors, contains no implications for the case sub judice, wherein the trial court found no aggravating factors and sentenced defendant within the presumptive range. The State's point is well taken.
Defendant also contends his sentence should be vacated because the State failed to allege aggravating factors in the indictment. This argument likewise has previously been resolved against defendant. See State v. Allen, 359 N.C. 425, 438, 615 S.E.2d 256, 265 (2005) (State not required to allege in underlying indictment aggravating factors which might lead to an enhancement of accused's sentence). Moreover, we reiterate that no aggravating factors were found by the trial court herein.
In sum, the trial court committed no prejudicial error in the trial and sentencing of defendant.
No error.
Judges TYSON and JACKSON concur.
Report per Rule 30(e).