STATE OF NORTH CAROLINA v. LEVON JUNIOR JONES

No. 497A93

(Filed 9 February 1996)

## 1. Evidence and Witnesses § 388 (NCI4th)— murder trial— evidence about subsequent assault—relevancy

The trial court did not abuse its discretion under the balancing test of Rule 403 by admitting testimony by a murder defendant's former girlfriend about defendant's conviction and sentence for an assault committed after the murder and the victim's condition and blood in defendant's car after the assault, since the testimony was relevant to show that the girlfriend waited three years to tell a deputy sheriff that defendant committed the murder because she was afraid of defendant and wanted to keep defendant in prison, and the testimony was admissible to explain the opening statement by defendant's attorney that the evidence would support the idea that defendant's girlfriend wanted to get away from defendant, that she reported defendant to get a $5,000 reward, and that she had changed her story several times. N.C.G.S. § 8C-1, Rules 403, 404(b).

**Am Jur 2d, Evidence §§ 404, 418, 427.**

## 2. Criminal Law § 1320 (NCI4th)— capital sentencing— instruction—consideration of guilt-innocence evidence

The trial court's instruction in a first-degree murder sentencing proceeding that all the evidence from the guilt-innocence phase "will be competent for your consideration in recommending punishment" did not improperly allow the jury to consider an assault by defendant after the murder as an aggravating circumstance for the murder since the court correctly charged the jury that it would have to find that defendant had been convicted of an assault that occurred prior to the murder in order to find the aggravating circumstance that he had previously been convicted of a violent felony. N.C.G.S. § 15A-2000(a)(3).

**Am Jur 2d, Trial § 1441.**

## 3. Evidence and Witnesses § 3156 (NCI4th)— credibility of witness—opinion testimony

A deputy sheriff who investigated a murder was properly permitted to testify that he had formed an opinion that a State's wit-

ness was a truthful and honest person and that he had not caught her in a lie that he could prove, since the credibility of a witness whose credibility has been attacked may be supported by opinion testimony pursuant to N.C.G.S. § 8C-1, Rule 608(a).

**Am Jur 2d, Witnesses § 106.**

4. **Criminal Law § 374 (NCI4th); Evidence and Witnesses § 1783 (NCI4th)— polygraph test—instruction not expression of opinion—time of ruling not prejudicial**

The trial court did not comment on defendant's credibility when it instructed the jury not to consider polygraph testimony after the State had accused defendant of lying when he testified that a polygraph operator said he was not guilty of the crime. Furthermore, any error in the admission of testimony that the polygraph operator said defendant was not guilty of the crime before the court instructed the jury not to consider any testimony about the polygraph test was favorable to defendant and not prejudicial.

**Am Jur 2d, Trial § 284.**

**Propriety and prejudicial effect of informing jury that witness in criminal prosecution has taken polygraph test. 15 ALR4th 824.**

5. **Criminal Law § 434 (NCI4th)— murder trial—closing argument—defendant's assault on another—no impropriety**

The prosecutor's closing argument in a first-degree murder trial concerning defendant's aggravated assault on another victim did not tell the jury to convict defendant of the murder because he had been convicted of the assault.

**Am Jur 2d, Trial §§ 609, 648.**

6. **Criminal Law § 444 (NCI4th)— murder trial—closing argument—length of investigation—not comment that defendant guilty because in jail**

The prosecutor's closing argument in a murder trial that the sheriff's department didn't go out and arrest the first live body they could find and put him in jail and charge him with the murder, that this case sat for over five years before defendant was arrested, and that "we have plenty to do without putting innocent people in jail" did not improperly tell the jury that defendant would not be in jail if he was not guilty but in effect told the jury

that, based on the length of the investigation, the jury should conclude it was painstakingly done and believe the State's evidence.

**Am Jur 2d, Trial § 648.**

**Propriety and prejudicial effect of prosecutor's argument to jury indicating his belief or knowledge as to guilt of accused-modern state cases. 88 ALR3d 449.**

7. **Criminal Law §§ 501, 878 (NCI4th)— jury divided in favor of conviction—knowledge by court—instructions about further deliberation—not coercive**

The trial court's additional instructions to a deadlocked jury were not coercive because the court knew the jury was divided eleven to one in favor of conviction. Nor were the instructions coercive because they included language not endorsed by N.C.G.S. § 15A-1235(b)(1) that "the court wants to emphasize the fact that it is your duty to do whatever you can to reach a verdict."

**Am Jur 2d, Trial §§ 1581, 1585.**

8. **Criminal Law § 452 (NCI4th)— capital sentencing—prosecutor's closing argument—prior felony convictions—no impropriety**

The prosecutor's closing argument in a first-degree murder capital sentencing proceeding that defendant had three prior felony convictions did not improperly allow the jury to consider defendant's conviction for an assault that occurred after the murder as an aggravating circumstance where the prosecutor and the court made clear that the assault which occurred prior to the murder was the only crime that would support the prior conviction of a violent felony aggravating circumstance. Furthermore, the prosecution was entitled to argue that the assault subsequent to the murder could be used in determining what weight to give to this aggravating circumstance.

**Am Jur 2d, Trial §§ 572, 1441.**

9. **Criminal Law § 442 (NCI4th)— capital sentencing—prosecutor's argument—crime rate—jury's duty**

It was not error for the prosecutor to argue in a capital sentencing proceeding that "you read the newspapers and magazines, and you watch TV, and you say, good gracious, look at this crime rate, it is out of hand, why don't they do something about it? . . . You are they."

STATE v. JONES

[342 N.C. 457 (1996)]

Am Jur 2d, Trial §§ 569, 648.

10. **Criminal Law § 455 (NCI4th)— capital sentencing—prosecutor's argument—death penalty—deterrence of defendant**

It was not error for the prosecutor to argue in a capital sentencing proceeding that the "only way you can guarantee that [defendant] won't get out of prison and kill somebody else is to impose the same punishment on him that he imposed on [the victim]."

Am Jur 2d, Trial § 572.

**Propriety and prejudicial effect of prosecutor's argument to jury indicating his belief or knowledge as to guilt of accused—modern state cases. 88 ALR3d 449.**

11. **Criminal Law § 452 (NCI4th)— capital sentencing—prosecutor's argument—jurors could produce more mitigating circumstances—no impropriety**

The prosecutor's argument in a capital sentencing proceeding that members of the jury or the prosecutor could produce more mitigating circumstances than the defendant if called upon to do so did not ask the jurors to place themselves in the place of a litigant and was not improper.

Am Jur 2d, Trial §§ 572, 1441.

12. **Jury § 192 (NCI4th)— failure to renew challenge for cause—waiver of appeal**

Defendant did not preserve his right to appeal the denial of his challenge for cause of a prospective juror whom he peremptorily challenged where defendant did not renew his challenge for cause after exhausting his peremptory challenges.

Am Jur 2d, Jury §§ 235-237.

**Validity and construction of statute or court rule prescribing number of peremptory challenges in criminal cases according to nature of offense or extent of punishment. 8 ALR4th 149.**

13. **Jury § 203 (NCI4th)— jury selection—disbelief in presumption of innocence—ability to follow law—denial of challenge for cause**

The trial court did not err by denying defendant's challenge for cause of a prospective juror where the court could have con-

cluded from the juror's *voir dire* testimony that, although he did not agree with the presumption of innocence, he would follow the law as given to him by the court.

**Am Jur 2d, Jury §§ 228-230.**

**14. Jury § 203 (NCI4th)— jury selection—desire not to see pictures of victim's body—denial of challenge for cause**

The trial court in a capital trial did not err by denying defendant's challenge for cause of a prospective juror who stated several times during her *voir dire* testimony that she did not want to see pictures of the victim's body and that seeing them would upset her where the juror also stated unequivocally at least three times that she would require the State to prove the defendant's guilt beyond a reasonable doubt.

**Am Jur 2d, Jury §§ 228-230.**

**15. Criminal Law § 1322 (NCI4th)— capital trial—parole eligibility—jury request—instructions**

Where the jury in a capital trial sent a note to the trial court asking whether a life sentence carried with it a possibility of parole, the court did not err by instructing the jury that the possibility of parole should not be considered and that the jury should make its recommendation as if life imprisonment means imprisonment for life.

**Am Jur 2d, Trial §§ 286, 1443.**

**16. Criminal Law § 1361 (NCI4th)— capital sentencing— impaired capacity mitigating circumstance—evidence insufficient to require submission**

The trial court did not err by failing to submit to the jury in a capital sentencing proceeding the statutory mitigating circumstance that defendant's capacity to appreciate the criminality of his conduct was impaired where testimony was presented at trial that defendant bought and drank some amount of liquor prior to the crime but the testimony did not speak to the effect the liquor had on the defendant's ability to understand and control his actions. N.C.G.S. § 15A-2000(f)(6).

**Am Jur 2d, Criminal Law §§ 598, 599.**

**Mental or emotional condition as diminishing responsibility for crime. 22 ALR3d 1228.**

STATE v. JONES

[342 N.C. 457 (1996)]

**Effect of voluntary drug intoxication upon criminal responsibility. 73 ALR3d 98.**

**17. Criminal Law § 1373 (NCI4th)— death penalty not disproportionate**

A sentence of death imposed upon defendant for first-degree murder was not disproportionate to the penalties imposed in other first-degree murder cases, considering both the crime and the defendant, where defendant intentionally shot the victim in his own home during a robbery and left him to die; defendant gained entry to the victim's home because the victim knew him; the jury found defendant guilty based on premeditation and deliberation as well as felony murder; the jury found as aggravating circumstances that (1) the defendant had previously been convicted of a felony involving the use of violence, and (2) the murder was committed for pecuniary gain; and the only mitigating circumstance found was the nonstatutory circumstance that defendant had exhibited religious beliefs and practices since incarceration.

**Am Jur 2d, Criminal Law § 628.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstnace that murder was committed for pecuniary gain, as consideration or in expectation of receiving something of monetary value, and the like—post-*Gregg* cases. 66 ALR4th 417.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Grant (Cy D.), J., at the 8 November 1993 Criminal Session of Superior Court, Duplin County, upon a verdict of guilty of first-degree murder. The defendant's motion to bypass the Court of Appeals as to his convictions of armed robbery and conspiracy to commit armed robbery was allowed by this Court on 15 August 1994. Heard in the Supreme Court 9 May 1995.

The defendant was tried for the first-degree murder of Leamon Grady, conspiracy to commit armed robbery, and armed robbery. The evidence showed that the body of Mr. Grady was found in his home at 3:00 a.m. on 28 February 1987. In August 1990, Ms. Lovely Lorden talked to Dalton Jones, investigations supervisor in the Duplin County Sheriff's Department. In November 1990, she told Mr. Jones all she knew of the incident.

**STATE v. JONES**

[342 N.C. 457 (1996)]

Ms. Lorden testified that in February 1987 she was living with the defendant. She testified further that sometime after midnight on 28 February 1987, she rode in an automobile with the defendant and two other men to the home of Leamon Grady. The three men left the automobile and went into Mr. Grady's home. The defendant was carrying a pistol. Ms. Lorden heard the sound of two gunshots, and the men returned to the automobile.

Ms. Lorden testified that she did not report the incident to the Sheriff's Department for three years because she was afraid of the defendant. The defendant was convicted in another case of assault with a deadly weapon with intent to kill and was sentenced to prison. Because she was afraid of what the defendant would do to her when he was released from prison, she told the complete story of the killing of Mr. Grady to Dalton Jones.

The defendant was convicted of all charges. After a sentencing hearing, the jury recommended that the defendant be sentenced to death. This sentence was imposed. The convictions for armed robbery and conspiracy to commit armed robbery were consolidated for sentencing, and a sentence of forty years in prison was imposed for these two crimes. The defendant appealed.

*Michael F. Easley, Attorney General, by Valerie B. Spalding, Assistant Attorney General, for the State.*

*Thomas K. Maher for defendant-appellant.*

WEBB, Justice.

[1] The defendant's first assignment of error involves the testimony of Lovely Lorden. In 1990, the defendant was convicted of assaulting a Mr. Martinez and was sentenced to prison. The assault occurred after the murder of Mr. Grady. Ms. Lorden had seen Mr. Martinez after the assault had occurred, and she was allowed to testify as to Mr. Martinez's condition and the blood that was in the defendant's automobile as a result of the assault. She was also allowed to testify that the defendant was convicted and sentenced to prison for assaulting Mr. Martinez. Dalton Jones was then allowed to testify to the condition of Mr. Martinez after the assault.

The defendant concedes that this testimony had some relevance to prove that Ms. Lorden was so afraid of him that she waited three years to contact Dalton Jones about the Grady murder and that she finally did so because she wanted to keep the defendant in prison.

STATE v. JONES

[342 N.C. 457 (1996)]

N.C.G.S. § 8C-1, Rule 404(b) (1992); *State v. Stager*, 329 N.C. 278, 406 S.E.2d 876 (1991). He says, however, that there was ample other evidence to prove these facts and that this testimony should have been excluded as unfairly prejudicial to him pursuant to N.C.G.S. § 8C-1, Rule 403. It is within the discretion of the trial judge whether to exclude relevant evidence pursuant to Rule 403. *State v. Mason*, 315 N.C. 724, 340 S.E.2d 430 (1986). We cannot hold that the court abused its discretion in admitting this testimony.

We note that in his opening statement to the jury, the defendant's attorney said there would be evidence from defendant's girlfriend that once again would send him to prison, that the evidence would support the idea that she wanted to get away from him, that she had reported the defendant to collect the $5,000 reward for producing Mr. Grady's murderer, and that she had changed her story several times. The State was entitled to introduce this testimony by Ms. Lorden to explain this opening statement by the defendant's attorney.

This assignment of error is overruled.

[2] The defendant next assigns error to the charge of the court at the sentencing proceeding. The court charged the jury that all the evidence from the guilt-innocence phase "will be competent for your consideration in recommending punishment." The defendant says this allowed the jury to consider the assault on Mr. Martinez as an aggravating circumstance, which it should not have been allowed to do because the assault occurred after the crime for which he was being tried. *State v. Goodman*, 298 N.C. 1, 257 S.E.2d 569 (1979).

N.C.G.S. § 15A-2000(a)(3) provides that all evidence presented during the guilt-innocence determination is competent for the jury's consideration in passing on punishment. The court instructed the jury according to this statute, and it was not error to do so. The court correctly charged the jury that it would have to find that defendant had been convicted of an assault that occurred prior to the time of the crime for which he was being tried in order to find the aggravating circumstance that he had been previously convicted of a felony involving the use or threat of violence to the person. This was one of the aggravating circumstances that supported the death penalty. The jury could consider evidence of the assault committed on Mr. Martinez in determining the weight to be given the aggravating circumstances.

This assignment of error is overruled.

[3]  The defendant next assigns error to the allowance of testimony by Dalton Jones. During direct examination of Mr. Jones, the following colloquy occurred:

Q.  In your dealings with Mrs. Lovely Lorden, have you been able to form an opinion as to whether or not she's a truthful and honest person?

MR. PHILLIPS: Objection.

THE COURT: Overruled.

A.  Yes, I think so. I've not, so far, per se, caught her in a lie that I can prove.

The defendant concedes that pursuant to N.C.G.S. § 8C-1, Rule 608(a), the credibility of a witness whose credibility has been attacked may be supported by opinion testimony. *State v. Morrison*, 84 N.C. App. 41, 351 S.E.2d 810, *cert. denied*, 319 N.C. 408, 354 S.E.2d 724 (1987). Nevertheless, the defendant says this testimony should have been excluded by N.C.G.S. § 8C-1, Rule 403, as more prejudicial than probative.

The defendant says a jury would likely give more weight than justified to the opinion of a law enforcement officer who investigated the case because it would assume he is an experienced professional who knows the facts. We cannot hold that this is a sufficient reason for us to write an exception into Rule 608(a) and say the rule does not apply to law enforcement officers.

This assignment of error is overruled.

[4]  The defendant next assigns error to the way in which the court handled certain testimony in regard to a polygraph test. While the defendant was being cross-examined as to when he had told Ms. Lorden that he would leave her, he said he had talked to Ms. Lorden in regard to a polygraph test he had taken. He said that Dalton Jones was present when the test was given and that Jones told the defendant he had failed the test. He then started to say what the person who administered the test had said, and the State objected, which objection was sustained. After a bench conference, the court directed the defendant to complete his answer to the question, and the defendant said the person who gave him the test said he was not guilty of the crime. The State cross-examined the defendant in regard to what was said by the person who administered the polygraph test and accused

the defendant of lying. The court then instructed the jury not to consider the testimony in regard to the polygraph test.

The defendant says that by instructing the jury not to consider the polygraph testimony after the State had accused the defendant of lying, the court gave the impression it did not believe the defendant, which violated the court's duty not to comment on the evidence. N.C.G.S. § 15A-1222 (1988).

We cannot find error in the way the court handled this matter. The defendant testified without objection that he was given a polygraph test, and that Dalton Jones had told him he had failed it. The State then interposed an objection before the defendant could testify as to what the polygraph operator said. The court allowed the defendant to testify that the polygraph operator said he was not guilty. This could not have prejudiced the defendant.

Evidence of the polygraph test should not have been admitted, and the court properly excluded it when an objection was made. *State v. Grier*, 307 N.C. 628, 300 S.E.2d 351 (1983). It could only be error favorable to the defendant to admit testimony that the polygraph operator said the defendant was not guilty before instructing the jury not to consider the testimony regarding the polygraph test.

This assignment of error is overruled.

The defendant next assigns error to arguments to the jury. No objection was made to these arguments, but the defendant contends they were so egregious the court should have intervened *ex mero motu*. When no objection is made, an argument must affect a defendant's right to a fair trial before a court must intervene. *State v. Zuniga*, 320 N.C. 233, 357 S.E.2d 898, *cert. denied*, 484 U.S. 959, 98 L. Ed. 2d 384 (1987).

[5] The defendant argues that there was evidence introduced of the assault on Mr. Martinez for the purpose of showing why Lovely Lorden was afraid of the defendant. He says the State erroneously argued that the jury should find the defendant guilty of the murder of Leamon Grady because he was involved in the assault on Mr. Martinez. We do not so read the argument. One of the prosecutors recounted the injuries inflicted on Mr. Martinez. He then said:

And this defendant was accused of what the very—almost same thing that he's accused of here in court today, assault with a deadly weapon inflicting serious injury—well, he's elevated now,

he's charged with murder now, as you know, and robbery, which is exactly what he did to Mr. Leamon Grady.

[6]  We do not believe this argument tells the jury to convict the defendant of murder because he was convicted of the assault on Mr. Martinez. While the court might have sustained an objection to this argument if one had been interposed, it was not so egregious that the court should have intervened *ex mero motu*.

At another place in the jury argument, a prosecuting attorney said:

> The sheriff's department didn't go out and arrest the first live body they could find and put them over there in jail and charge them with murder, did they? This case sat for six—it sat until August of '92 before the defendant and his coconspirators were arrested. It's not fun and games to lock people up and (inaudible), you know that? It's not a lot of fun to do that. I can assure you that we have plenty to do without putting innocent people in jail.

The defendant contends that this argument is improper because it tells the jury that the defendant would not be in jail if he was not guilty. He says the argument rests on facts that are not in evidence but are known to the prosecutor. We believe the prosecutor's argument is that based on the length of the investigation, the jury should conclude it was painstakingly done and should believe the State's evidence. This is not an improper argument.

This assignment of error is overruled.

[7]  The defendant's next assignment of error deals with the court's instruction as to the jury's duty to reach a verdict. After approximately one-half day of deliberation, the jury sent the court a note stating it was eleven to one for conviction. The court told the defendant and the attorneys that the split was eleven to one but did not tell them eleven were for conviction. The court instructed the jury that it should continue its deliberations. Several hours later, at approximately 5:00 p.m., the jury sent the court a note that read, "[S]till no decision! Please instruct." The court sent the jurors home for the evening and instructed them the next morning as follows:

> Now, you informed me that you have so far been unable to agree upon a verdict. The Court wants to emphasize the fact that it is your duty to do whatever you can to reach a verdict. You should reason the matter over together as reasonable men and women

and to reconcile your differences if you can without the surrender of conscientious convictions. But, no jury [sic] should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the opinion of his or her fellow jurors, or for the mere purpose of returning a verdict. I will now let you resume your deliberations and see if you can reach a verdict.

Approximately one-half hour later, the jury found the defendant guilty of all charges.

The defendant concedes that this Court has upheld similar instructions in *State v. Forrest*, 321 N.C. 186, 362 S.E.2d 252 (1987), and *State v. Fowler*, 312 N.C. 304, 322 S.E.2d 389 (1984). He says the distinction between those cases and this case is that the court in this case knew the jury was eleven to one for conviction, while it knew only the numerical divisions in *Forrest* and *Fowler*. He says when the court and the jury know the division is in favor of one result, any instruction on the duty to reach a verdict will be understood by the jury as an endorsement of the majority's position.

We do not believe this instruction by the court is any more coercive because the court knew the majority position. It should be equally coercive whether or not the court knows the division of the vote.

The defendant also says the language used by the court—"[t]he Court wants to emphasize the fact that it is your duty to do whatever you can to reach a verdict"—is not specifically endorsed by N.C.G.S. § 15A-1235(b)(1), which only authorizes an instruction that "[j]urors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment." The defendant acknowledges that we approved this language in *Forrest* and *State v. Bussey*, 321 N.C. 92, 361 S.E.2d 564 (1987).

This assignment of error is overruled.

[8] The defendant next assigns error to an argument made by the prosecuting attorney at the sentencing proceeding. He argued as follows:

This is not a case where the defendant had a bad day and never done anything wrong in his life. Members of the jury, you've heard

about his life. You've heard that he has had three prior felony convictions before today, three prior felony convictions.

The defendant says this improperly allowed the jury to consider the conviction of the assault on Mr. Martinez, which was not an aggravating circumstance or relevant to rebut any mitigating circumstance because the assault occurred after the murder of Mr. Grady.

The prosecuting attorney and the court made clear that the assault on Allen Bizzell, which occurred prior to the murder of Mr. Grady, was the only crime that would support the aggravating circumstance that the defendant had been previously convicted of a felony involving the use or threat of violence to the person. N.C.G.S. § 15A-2000(e)(3) (1988) (amended 1994). The prosecution was entitled to argue that the assault on Mr. Martinez could be used in determining what weight to give this aggravating circumstance.

This assignment of error is overruled.

The defendant next assigns error to three separate parts of the State's jury argument during the sentencing proceeding. At one point, the prosecuting attorney argued:

[Y]ou read the newspapers and magazines, and you watch TV, and you say, good gracious, look at this crime rate, it is out of hand, why don't they do something about it? Well, ladies and gentlemen, there's no mythical "they" floating out in space anymore. You are they.

The defendant, relying on *State v. Scott*, 314 N.C. 309, 333 S.E.2d 296 (1985), says that it was error to allow the State to make this argument because it asked the jury to convict him in response to the crime rate. In *Scott*, we held it was error for the State to argue that "there's a lot of public sentiment at this point against driving and drinking, causing accidents on the highway." *Id.* at 312, 333 S.E.2d at 298. We said this statement encouraged the jury to ignore the evidence and "hark to a pack already hot on the trail and in full cry." *Id.*

We also said in *Scott* that it was not error for the State to argue that "you read these things and you hear these things and you think to yourself, 'My God they ought to do something about that. . . .' Well, ladies and gentlemen, the buck stops here. You twelve judges in Cumberland County have become the 'they'." *Id.* at 311, 333 S.E.2d at 297. The language used by the prosecuting attorney in this case is similar to the language we approved in *Scott*. We find no error. *See State*

*v. Moseley*, 338 N.C. 1, 53, 449 S.E.2d 412, 443 (1994), *cert. denied,* —— U.S. ——, 131 L. Ed. 2d 738 (1995).

**[10]** The defendant next argues under this assignment of error that the State should not have been allowed to argue that the "only way you can guarantee that [the defendant] won't get out of prison and kill somebody else is to impose the same punishment on him that he imposed on Leamon Grady." He concedes that we have decided this issue contra to his position in *State v. Payne*, 337 N.C. 505, 448 S.E.2d 93 (1994), *cert. denied,* —— U.S. ——, 131 L. Ed. 2d 292 (1995). We see no reason to change our position on this question.

**[11]** The defendant next contends that it was error to allow the State to make the following argument in an effort to denigrate the mitigating circumstances he submitted:

> You've heard, and we're not going to stay up here and argue, I'll argue all day how flimsy these factors are. But you just sit up here and go, if you were up here, how many mitigating factors you'd have your might [sic] present to you, the good things that you've done in your lifetime, just think about it. It would be a sad commendation if all I had was 10 mitigating factors, ten whole things in my whole lifetime that are of value.

The defendant contends that this argument is a form of "Golden Rule" argument in which jurors are asked to put themselves in the place of litigants in deciding what they deserve. He says this is an improper argument. *State v. McCollum*, 334 N.C. 208, 224, 433 S.E.2d 144, 152 (1993), *cert. denied,* —— U.S. ——, 129 L. Ed. 2d 895 (1994). An argument that the members of the jury or the prosecuting attorney could produce more mitigating circumstances than the defendant if called upon to do so does not ask the jurors to put themselves in the place of a litigant. We find no error in this argument.

This assignment of error is overruled.

The defendant next assigns error to the denial of his challenges for cause to two of the jurors. When the last juror was to be selected, Donald Ray Davis was called to the box. The prosecuting attorney questioned Mr. Davis as follows:

Q. Okay. And then I assume, as you sit here today, that you can give both sides a fair trial?

A. Well, I reckon, I don't know.

STATE v. JONES

[342 N.C. 457 (1996)]

Q. Okay. Well, talk to us about that. You say you reckon you can?

A. Well.

. . . .

Q. Okay. Now, at this time he is presumed to be innocent. He's presumed to be innocent. All people charged with crimes are presumed to be innocent until they are proven guilty, okay?

A. (Nods.)

Q. And do you believe in that law, that a person is presumed to be innocent?

A. Well.

Q. Until we prove him otherwise?

A. Well, to tell you the truth, I don't.

Q. You don't believe in that?

A. No. Well, I think they spend a lot of money for nothing a lot of times to be honest with you.

Q. Okay. Well, that's exactly what we want. We want your honesty. Mr. Davis, do you feel like you could be a fair juror in this case or not?

A. Mm, I really don't know to tell you the honest truth, to give you an honest answer, I don't know.

. . . .

Q. Okay. Now, let me ask you this then. If you sat here on this jury and you heard the case and you just were not convinced the man was guilty, you would vote not guilty, wouldn't you?

A. Yeah, if I was convinced of that, yeah.

Q. Now, you understand that he doesn't have to convince you of anything?

A. (Nods.)

Q. . . . As I've indicated, the defendant has been charged with these crimes, and he's pled not guilty and says he's innocent, okay?

A. (Nods.)

Q.  The law is that, since we charged him with the crime of murder and we say he is guilty, it's us, we must prove that he's guilty to you, do you understand?

A.  Right.

Q.  And if we don't do our job and if we don't prove to you that he's guilty, then it's your job to find him not guilty, do you understand?

A.  Mm-hmm.

Q.  He doesn't have to prove he's innocent. He doesn't have to prove anything, okay?

A.  (Nods.)

Q.  We have to prove it. That's our system of justice. It's not just for him. . . . Do you understand?

A.  Yeah.

Q.  And until we prove that he's guilty, it's your job to vote not guilty. Do you understand?

A.  Yeah.

Q.  Okay. And you agree with that law?

A.  Well, I reckon so.

Q.  Well, you don't think a person charged should have to prove their innocence, do you?

A.  Well, if you've got to have some evidence to charge him, it looks to me like, you know, well, I may be wrong, I don't know.

Q.  Well, anyhow, the point is, Mr. Davis, . . . can you put aside your own personal opinions about that and sit and listen, I mean if I just stood up there now and said that we would rest our case and not present anything, . . . you would find him not guilty, wouldn't you?

A.  I reckon so.

Q.  Well, you wouldn't want to be in his position?

A.  No, I wouldn't.

Q.  And charged and say you find him guilty just because he's charged with it?

A.  Right.

Q.  That's what I'm getting at. Just because he's been charged is certainly no evidence of his guilt. That is if that would be true, every time we'd just go ahead and do it, do you understand?

A.  Right.

Q.  Okay. So if you're selected to be on this jury, you would vote not guilty until we prove to you that he's guilty, wouldn't you?

A.  Yeah, I reckon so.

Q.  I mean you'd do that, wouldn't you?

A.  Yeah.

The defense counsel then questioned the juror as follows:

Q.  Now, you also indicated that you felt like that maybe the judicial system in the trial of cases sometimes just took too much of the public's time?

A.  I think they do, a lot of taxpayer[s'] dollars, you know.

Q.  And well, in a case like this, where [defendant] is charged with murder and robbery and conspiracy to commit robbery, if he elects not to take the stand and testify, would you hold that against him?

A.  Well, if he don't stand up for himself, I mean, he should stand up for himself, that's the way I feel about it, you know.

Q.  Even though if the Court should instruct you that you could not hold that against him, you still feel that he ought to stand up for himself in this trial?

A.  Right, he should.

The defendant challenged Mr. Davis for cause, which was denied. The court then explained to Mr. Davis the law in regard to the presumption of innocence and engaged him in the following colloquy:

Q.  All right. That's going to be the law. That's what I'm going to instruct the jury. Now in this case, I'm asking you can you follow that law? I know you may have other opinions as to what the law is or what the law ought to be, but can you follow the law as I just gave it to you as it applies to this case?

A.  Yeah, but the way I look at it, I am, you know, you've got certain evidence against him, right?

THE COURT: No, I don't have any evidence against him, sir.

A.  Well, why do you hold him? Well, you're holding him for some reason.

THE COURT: Excuse me. I'm not going to get into an argument.

A.  Well, yeah, I know what you're talking about.

THE COURT: I'm sort of like a referee. The State is Mr. Hudson. They have a burden to prove him guilty to the jury and they need to carry that burden before you can find him guilty. Do you understand that, sir?

[A].  Mm-hmm.

THE COURT: He may simply sit over there and rely—and his lawyers may determine that the State has not carried its burden, that the State has not proved him guilty, that they have not presented enough evidence to prove him guilty, and he may not take the witness stand. Now, I'm saying, can you follow that law?

A.  Yeah, if that's what you want me to do, I will.

THE COURT: If you sit as a juror, that would be your duty to follow the law. Can you do that?

A.  I'll try it.

The defendant renewed his challenge for cause, and the challenge was denied. The defendant then exercised his last peremptory challenge to Mr. Davis. The defendant asked the court to give him an extra peremptory challenge when the next juror said he had previously served on a jury that had sentenced someone to death. This request was denied.

[12]  N.C.G.S. § 15A-1214 provides:

(h) In order for a defendant to seek reversal of the case on appeal on the ground that the judge refused to allow a challenge made for cause, he must have:

(1) Exhausted the peremptory challenges available to him;

(2) Renewed his challenge as provided in subsection (i) of this section; and

(3) Had his renewal motion denied as to the juror in question.

(i) A party who has exhausted his peremptory challenges may move orally or in writing to renew a challenge for cause previously denied if the party either:

(1) Had peremptorily challenged the juror; or

(2) States in the motion that he would have challenged that juror peremptorily had his challenges not been exhausted.

N.C.G.S. § 15A-1214(h), (i) (1988). The defendant did not renew his challenge for cause to Mr. Davis. Thus, he has not preserved his right to appeal the denial of his challenge for cause under this section. *State v. Quick*, 329 N.C. 1, 405 S.E.2d 179 (1991).

[13] If the defendant had preserved his right to appeal, he would not have been entitled to relief. He argues, relying on *State v. Cunningham*, 333 N.C. 744, 429 S.E.2d 718 (1993), and *State v. Hightower*, 331 N.C. 636, 417 S.E.2d 237 (1992), that Mr. Davis repeatedly stated that he did not agree with the presumption of innocence and would expect the defendant to prove he was innocent. The defendant says Mr. Davis agreed only to "try" to follow the law if he were selected as a juror. We disagree. As we read the statement of Mr. Davis, the court could have concluded that Mr. Davis may not have agreed with the presumption of innocence but would follow the law as given to him by the court. This was all that was required to deny the challenge for cause. *State v. McKinnon*, 328 N.C. 668, 403 S.E.2d 474 (1991).

[14] The defendant also contends under this assignment of error that it was error not to allow his challenge for cause to Ms. Bobby Outlaw Tucker. During jury selection, the following colloquy occurred between defense counsel and Ms. Tucker:

A.   Could I say something? If they were going to show a lot of pictures of the man and he's murdered and all that, I don't believe that I'd like to see that, that would bother me because I don't believe in violence.

Q.   Ms. Tucker, in the event that you were shown a picture of Mr. Grady in this case, as indicating his death, and the fact that he is actually dead in the picture, would that alone influence you into determining in your mind that somebody ought to pay for that and

somebody ought to pay a death for a death and an eye for an eye, do you believe in that?

A. Sort of.

Q. Sort of?

A. I do not like violence at all. I won't even look at violence on TV.

Q. Yes, ma'am. But if you were shown this picture and that picture illustrates that—

A. That probably would upset me because, like I said, I will not look at anything violent, so that is one thing that would bother me.

Q. Well, after you've seen that picture, or it's been showed to you for your viewing, could you then be fair the rest of the trial, even though you'd seen that picture?

A. I don't believe so.

Q. Do you feel that that would be able to keep you from then listening to the instruction of the Court and giving my client a fair trial?

A. It probably would.

Q. If this Court would then instruct you to follow his instructions and to abide by his instructions, could you even then render an impartial verdict in this case after you'd seen those photographs?

A. I don't know. I can't stand to look at pictures like that without it upsetting me.

THE COURT: I guess the question would be, Ms. Tucker, if you looked at the pictures and they somewhat bothered you, would you in some way feel unfair to the defendant, Mr. Jones, or hold something against Mr. Jones simply because he's being tried for that murder?

A. If I felt like he was guilty of it, I mean.

Q. You would still have to go through the process of him [being] proven guilty to you beyond a reasonable doubt?

A. Yeah.

Q. Is that correct?

STATE v. JONES

[342 N.C. 457 (1996)]

A. Yeah.

Q. And that standard wouldn't be any less simply because you saw the pictures, would it?

A. Well, I was just saying, I don't want to see the pictures of it.

Q. I understand that. Now, if you were to sit as a juror in this particular case, and pictures are introduced, and all the other jurors see the pictures, you will have to look at the pictures. Now, there's no rule that you have to look at them any longer than another juror, or as long as another juror, but you would be required to look at all the evidence.

A. I wouldn't like that.

Q. I understand. And Mr. Hudson, I think I'm correct in saying these are all black and white pictures, aren't they?

MR. HUDSON: Yes, sir, they are.

THE COURT: These are black and white pictures. They will not be color photographs.

A. Well, like I said, I won't even look at violence on TV, and I don't want to see no pictures.

Q. But if you're chosen as a juror, would you look at the pictures?

A. I reckon I have to, but I wouldn't want to.

Q. All right. You may continue, Mr. Phillips.

MR. PHILLIPS: Is she back with me, Your Honor?

THE COURT: Yes, sir.

MR. PHILLIPS:: Ms. Tucker, are you saying to this Court that if you have an opportunity to look at some pictures, and it indicates what I've just said, that after you look at those pictures, that it will alarm you in such a way, possibly, that you could not then deliberate fairly and render a verdict fairly as far as my client is concerned?

A. Probably, right.

MR. PHILLIPS: I'd challenge for cause.

THE COURT: Why is that, Ms. Tucker? Why couldn't you be fair after looking at the pictures?

A.  I don't know. Anything like that just upsets me.

Q.  Well, what I'm saying, ma'am, we realize that it may upset you, but would you in some way hold that against Mr. Jones or hold it against the State because you saw the pictures of a deceased person?

A.  Well, I ain't never been put in that—well, I don't know.

Q.  You would still require that the State prove to you beyond a reasonable doubt, that is fully satisfy you and entirely convince you that this man did it? That this man committed the murder that is reflected in the picture, wouldn't you, ma'am?

A.  Well, they must have reason to think he did it, or he wouldn't be here.

Q.  What I'm saying, you're going to require that they prove it to you beyond a reasonable doubt, is that correct?

A.  Yes.

Q.  And if they fail to prove it to you, if you're not fully satisfied or if you're not entirely convinced that this man did it, . . . would you find him not guilty?

A.  Well, I guess so.

Q.  Even after looking at the pictures would you find him not guilty.

A.  I don't know. I ain't never been faced with anything like that before.

Q.  Let's say for example you have an opportunity to view the pictures and they may upset you, you would still then require, wouldn't you, that the State prove to you beyond a reasonable doubt, that is if they fully satisfy you and entirely convince you that Mr. Jones did it, he committed the murder as reflected in the pictures, before you would return a verdict of guilty?

A.  No.

THE COURT: I'm going to deny your challenge, Mr. Phillips.

After the defendant's challenge for cause was denied, he then challenged Ms. Tucker peremptorily. He contends her answers demonstrate that viewing photographs of Mr. Grady's body would prevent her from rendering a fair verdict. The defendant did not

renew his challenge for cause to Ms. Tucker and did not preserve the right to appeal the denial of the challenge under N.C.G.S. § 15A-1214(h).

If the defendant had preserved his right to appeal the denial of his challenge for cause to Ms. Tucker, it would have been to no avail. While Ms. Tucker said several times that she did not want to see pictures of Mr. Grady's body and that seeing them would upset her, she also stated unequivocally at least three times that she would require the State to prove the defendant's guilt beyond a reasonable doubt. Thus, she indicated she would follow the law. Despite her final answer in the negative, we cannot hold that the court, in light of Ms. Tucker's previous answers and demeanor, was in error in determining she would be a reliable juror. Considering the deference we must pay to the trial court, we can find no error in its ruling. *See State v. House,* 340 N.C. 187, 194, 456 S.E.2d 292, 296 (1995).

This assignment of error is overruled.

**[15]** The defendant next assigns error to an instruction to the jury in regard to his eligibility for parole. The jury sent a note to the court asking whether a life sentence carried with it the possibility of parole. The court instructed the jury that the possibility of parole should not be considered and that the jury should make its recommendation as if life imprisonment means imprisonment for life. The defendant says this was error.

The defendant candidly concedes we have decided this question against his position. *State v. Skipper,* 337 N.C. 1, 446 S.E.2d 252 (1994), *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 895 (1995). He wishes to preserve this question for further review.

This assignment of error is overruled.

The defendant argues under his next assignment of error that the court did not properly instruct the jury in regard to the mitigating circumstances unrelated to the crime. He concedes that we answered this question against his position in *Skipper* but wishes to preserve this question for further review.

This assignment of error is overruled.

**[16]** The defendant's final assignment of error is that the court erred in failing to submit to the jury the statutory mitigating circumstance that the defendant's capacity to appreciate the criminality of his conduct was impaired. N.C.G.S. § 15A-2000(f)(6). The defendant argues

that because there was direct testimony that the defendant had been consuming liquor for hours prior to the crime and that it made him intoxicated, the court should have submitted the circumstance. Voluntary intoxication is properly considered under the (f)(6) mitigating circumstance. *State v. Irwin*, 304 N.C. 93, 282 S.E.2d 439 (1981). Before (f)(6) applies, however, a defendant's faculties must have been impaired by intoxication to such a degree that it affects his ability to understand and control his actions. *State v. Johnson*, 317 N.C. 343, 346 S.E.2d 596 (1986). The defendant has not made such a showing. The testimony at trial was that the defendant bought some amount of liquor and drank some of it. The testimony does not speak to the effect the liquor had on the defendant's ability to understand and control his actions. Therefore, the court did not err in failing to submit the mitigating circumstance to the jury.

This assignment of error is overruled.

We find no error in the trial or sentencing proceeding.

### PROPORTIONALITY REVIEW

[17] In reviewing the sentence, as we are required to do by N.C.G.S. § 15A-2000(d), *State v. Brown*, 320 N.C. 179, 358 S.E.2d 1, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987); *State v. Williams*, 308 N.C. 47, 301 S.E.2d 335, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983), we have conducted a thorough review of the transcript, record on appeal, briefs, and oral arguments of counsel, and we conclude that the jury's finding of each aggravating circumstance was supported by the evidence. We further conclude that nothing in the record suggests that the jury recommended the death penalty while under the influence of passion, prejudice, or any other arbitrary factor.

Our final task is to determine whether the sentence was excessive or disproportionate to the penalties imposed in other first-degree murder cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2). The defendant in this case murdered the victim in his own home during the course of a robbery. The jury found the defendant guilty of first-degree murder based on premeditation and deliberation as well as felony murder. The jury found as aggravating circumstances that (1) the defendant had previously been convicted of a felony involving the use of violence, N.C.G.S. § 15A-2000(e)(3); and (2) the murder was committed for pecuniary gain, N.C.G.S. § 15A-2000(e)(6). The only mitigating circumstance found was the

nonstatutory mitigating circumstance that defendant had exhibited religious beliefs and practices since incarceration.

The defendant cites two cases with facts similar to the facts in this case where the jury recommended life in prison. *State v. Wilson*, 311 N.C. 117, 316 S.E.2d 46 (1984); *State v. Hunt*, 305 N.C. 238, 287 S.E.2d 818 (1982). He also cites *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983), in which this Court held the death sentence disproportionate in a case in which the defendant killed a man during a robbery. The opinions in *Wilson* and *Hunt* do not say what aggravating circumstances, if any, were found. In *Jackson*, the pecuniary gain aggravating circumstance was found.

We are impressed in this case that the jurors found as an aggravating circumstance that the defendant had previously been convicted of a violent felony. A jury could well be more willing to impose the death sentence on one who is prone to violence. In *State v. Harris*, 338 N.C. 129, 449 S.E.2d 371 (1994), *cert. denied,* —— U.S. ——, 131 L. Ed. 2d 752 (1995); *State v. Green*, 336 N.C. 142, 443 S.E.2d 14, *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 547 (1994); *State v. Rose*, 335 N.C. 301, 439 S.E.2d 518, *cert. denied,* —— U.S. ——, 129 L. Ed. 2d 883 (1994); and *State v. Taylor*, 304 N.C. 249, 283 S.E.2d 761 (1981), *cert. denied,* 463 U.S. 1213, 77 L. Ed. 2d 1398 (1983), we affirmed death penalties when the juries found the prior conviction of a violent felony aggravating circumstance. In *Rose* we said, "Of the cases in which this Court has found the death penalty disproportionate, none have involved the aggravating circumstance of a prior conviction of a felony involving the threat or use of violence against the person." *Rose*, 335 N.C. at 351, 439 S.E.2d at 546.

We are also impressed that the jury found that the murder in this case was based on premeditation and deliberation. We believe this is a crime more deserving of the death penalty than felony murder. The defendant gained entry to Mr. Grady's home because Mr. Grady knew him. He intentionally and deliberately shot Mr. Grady and left him to die. Juries have consistently returned death sentences in this state for murders comparable to this one. The sentence imposed in this case is proportionate.

NO ERROR.